UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-CV-20601-CMA

MILAINE MARRERO,

    Plaintiff,

v.

AMAZON.COM SERVICES LLC,

    Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

                                  **LITTLER MENDELSON, P.C.**
                                  Wells Fargo Center
                                  333 SE 2nd Avenue, Suite 2700
                                  Miami, Florida 33131

                                  Miguel A. Morel (FBN: 89163)
                                  E-mail: <u>mmorel@littler.com</u>
                                  Sinead D. Motta (FBN: 115438)
                                  E-mail: <u>sdaly@littler.com</u>

                                  *Attorneys for Defendant,*
                                  *Amazon.com Services LLC*

**Dated**: November 16, 2023

Defendant Amazon.com Services LLC ("Amazon" or "Defendant") respectfully submits this Motion for Summary Judgment and Incorporated Memorandum of Law, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1. Amazon is entitled to summary judgment as there are no genuine issues of material fact with respect to any of Plaintiff Milaine Marrero's ("Plaintiff") claims.[1]

## I.     INTRODUCTION

The Court should grant summary judgment to Amazon on Plaintiff's Americans with Disabilities Act ("ADA") claims because Plaintiff is estopped from bringing those claims. In the Eleventh Circuit, courts give "the same preclusive effect" to the decision of an Administrative Law Judge ("ALJ") after a contested hearing as they would to a state court decision. *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003). Here, Plaintiff brought her disability and retaliation claims under the ADA to the Florida Commission on Human Relations ("FCHR"). She took her claims to an evidentiary hearing. The Administrative Law Judge ("ALJ") considered the evidence, including testimony, and found in Amazon's favor on all of Plaintiff's claims. The FCHR adopted the ALJ's findings, issuing a Final Order which states that the ALJ's factual findings were supported by "competent substantial evidence" and the ALJ's "application of the law to the facts" resulted "in a correct disposition of the matter." In light of that determination, Plaintiff is collaterally estopped from bringing her ADA claims. The Court should grant judgment to Amazon on Counts III-V of the Complaint.

Even if Plaintiff was not estopped from bringing her ADA claims, Amazon would still be entitled to summary judgment on those claims. Plaintiff is not disabled, was not a qualified individual with a disability, and was not discriminated against because of her alleged disability. Plaintiff had periodontitis; i.e. a gum infection, which did not substantially limit any of her major life activities. The fact she is not disabled is fatal to her discrimination claim. In addition, as Plaintiff's work could only be done in person, her failure to return to work rendered her unqualified for her position. The evidence compels the conclusion that Amazon had a good faith belief that Plaintiff had abandoned her job. Plaintiff's abandonment of her job is a legitimate, non-discriminatory, basis for her termination. Plaintiff has no, because there is no, evidence that this

---

[1] Defendant files its Concise Statement of Undisputed Material Facts ("SOF") contemporaneously with this Motion for Summary Judgment. The SOF will be cited as "SOF ¶ __."

reason is a pretext for discrimination. The Court should grant judgment to Amazon on Count IV of the Complaint.

Plaintiff's failure to accommodate claim fares no better. As noted above, she is not disabled which alone a sufficient basis for judgment in Amazon's favor. Regardless, Amazon did accommodate Plaintiff's periodontitis, granting her all the full two weeks' leave her dentist indicated she needed. Amazon's granting Plaintiff this leave also satisfied its obligations under the Family and Medical Leave Act ("FMLA"). Plaintiff did not seek further leave and Amazon understood, based on the note it had from her dentist, that she was cleared to return to work. There is no violation of the ADA or FMLA when an employer does not grant leave that an employee never requested. The Court should grant judgment to Amazon on both Plaintiff's ADA failure to accommodate and her FMLA "interference" claims. Indeed, the Court should grant judgment to Amazon on Plaintiff's FMLA claim for the additional reason that she did not have a serious health condition and, thus, was not eligible for leave under it.

Finally, the Court should grant judgment to Amazon on Plaintiff's retaliation claims, whether set forth under the ADA or the FMLA. Plaintiff's abandonment of her job is a legitimate, non-retaliatory basis for her termination. It is not a pretext for retaliation; rather, Amazon had a good faith belief that Plaintiff abandoned her job.

**II.     SUMMARY OF UNDISPUTED FACTS**

    **A.     Plaintiff Is Hired by Amazon and, Later, Abandons Her Job Resulting in the Termination of her Employment.**

Amazon hired Plaintiff in January 2020 as a Fulfillment Associate; *i.e.*, Warehouse Associate at Amazon's Fulfillment Center in Opa-Locka, Florida ("the Facility" or "MIA-1"). (SOF ¶ 5). As a Fulfillment Associate at MIA-1, Plaintiff worked in the inventory-control section of the Facility and was tasked with counting merchandize for inventory control purposes. (*Id.*, ¶¶ 6-7).

In April 2021, Plaintiff was diagnosed with an abscess and gum infection (periodontitis). (*Id.*, ¶ 11). Dr. Lujan, Plaintiff's dentist, confirmed that her condition "wasn't serious." (*Id.*, ¶ ). However, Plaintiff complained of trouble eating and pain and swelling and Dr. Lujan recommended that she have five teeth extracted after antibiotics did not resolve Plaintiff's complaints. (*Id.*, ¶ 13). Dr. Lujan estimated that Plaintiff would need three to four weeks for treatment and recovery, which included healing and taking impressions for dentures. Plaintiff notified Amazon of the upcoming extraction but continued to work prior to it. (*Id.*, ¶ 10).

On or about April 30, 2021, Plaintiff contacted Amazon's Disability and Leave Services team ("DLS") to request a leave of absence under the FMLA beginning May 16, 2021 to undergo the teeth extraction procedure. (*Id.*, ¶ 8). Thereafter, on May 3, 2021, DLS notified Plaintiff that she had been conditionally approved for FMLA leave from April 30, 2021 through June 5, 2021. (*Id.*, ¶ 15). DLS informed her to "read all of the material in this packet, which describes your rights and responsibilities…" and requested that she "return the enclosed Certification Form" because "Certification is needed to approve leave." (*Id.*, ¶ 16).

On May 14, 2021, Plaintiff had five of her teeth extracted. (*Id.*, ¶ 19). The same day, Dr. Lujan, submitted a note to Amazon informing it that Plaintiff had multiple extractions and sutures and "need[ed] to rest and return in 2 weeks." (*Id.*, ¶ 20).

Consistent with Dr. Lujan's certification, Amazon approved Plaintiff for FMLA leave from May 14, 2021 through May 28, 2021. (*Id.*, ¶ 21). Amazon informed Plaintiff that "[she was] expected to return to work on May 29, 2021, or [her] next scheduled shift. If this date changes, please contact [Amazon] immediately to request an extension." (*Id.*, ¶ 22). Amazon warned her that she would be held to Amazon's attendance policy and have unpaid time deductions ("UPT") if she did not return to work or request an extension. (*Id.*, ¶ 23).

On May 25, 2021, Marrero called to inform Amazon that she would be going back to see her dentist on May 28, 2021, at which point "he would decide whether [she] could go back to work or not." (*Id.*, ¶ 24). In that call, Amazon told Plaintiff that the dentist should upload documents again with regard to "whether [she] was released or whether [she] was disabled." (*Id.*, ¶ 25).

On or about May 28, 2021, Plaintiff attended a follow up appointment with Dr. Lujan. (*Id.*, ¶ 26). Per Dr. Lujan, Plaintiff no longer had an infection. (*Id.*, ¶ 27). Accordingly, that same day, Dr. Lujan submitted a note to Amazon indicating Plaintiff could return to work. (*Id.*, ¶ 29). Specifically, his note had the pre-printed words "able to return to work on ___" and he circled the word "work." (*Id.*). This note further instructed Plaintiff to return to his office in three weeks. (*Id.*). Dr. Lujan and Plaintiff did not provide any further documentation to Amazon with respect to her condition after this May 28, 2021 note. (*Id.*, ¶ 41).

On June 6, 2021, DLS case assistant Vershanda Williams began reviewing Plaintiff's case. (*Id.*, ¶ 31). Ms. Williams reviewed the May 28, 2021 note from Dr. Lujan. (*Id.*, ¶ 33). Ms. Williams understood the note to mean that Plaintiff was released to return to work as of the date of her May 28 office visit with her dentist and, further, that Plaintiff had "a follow up appointment in the next three weeks." (*Id.*, ¶¶ 34-36). Ms. Williams did not understand the note "as an extension, because

3

the doctor had indicated that [Marrero is] able to return to work as of that date that they were evaluated on, and that their follow up appointment was just going to be in three weeks." (*Id.*, ¶ 36). Based on Dr. Lujan's note, Ms. Williams closed Plaintiff's DLS case and Plaintiff was placed on active status. (*Id.*, ¶¶ 38-39).

Although her leave had not been extended beyond May 28, 2021, Plaintiff did not return to work. (*Id.*, ¶ 42). Per Amazon policy, job abandonment occurs when an associate does not show up for work for three consecutive days without being in contact with Amazon to report the absence. (*Id.*, ¶ 43). On the morning of June 6, 2021, Amazon sent Plaintiff an email notifying her that she had missed two shifts and that failure to respond or take action could result in separation of her employment for job abandonment. (*Id.*, ¶ 44). The email also stated "if you are eligible and require a leave of absence[]; received approval for covered absences due to your own personal medical condition; or you believe your absences should be covered by a pre-approved leave – *please contact the leave team . . . .* " (*Id.*, ¶ 45). Plaintiff did not respond to the email. (*Id.*, ¶ 46).

The evening of June 6, 2021, Amazon sent Plaintiff a second job abandonment email to the same address with the subject "IMMEDIATE RESPONSE REQUIRED: Amazon Job Abandonment Notice" notifying her that she had missed a third shift. (*Id.*, ¶ 47). This second notice informed Plaintiff that after missing three consecutive shifts, Amazon would consider her to have resigned her employment as a result of Job Abandonment. (*Id.*, ¶ 48). With this notice, Amazon further instructed Plaintiff to "PLEASE RESPOND TO THIS EMAIL" or to contact the Employee Resource Center with any questions. (*Id.*, ¶¶ 48-49).

Plaintiff received both the ***first*** and the ***second*** email-warnings that her job was in jeopardy. (*Id.*, ¶¶ 46, 51). Plaintiff did not respond to either email; indeed, Plaintiff did not call Amazon after June 2, 2021 – except for a brief call in July 2021 during which Plaintiff called to obtain Amazon's corporate address in order to file her charge of discrimination. (*Id.*, ¶ 51). Plaintiff did not inform Amazon of any further issues with or treatment related to her condition. (*Id.*, ¶ 41).

Amazon's People Experience and Technology ("PXT") team, which supports human resources by assisting associates with time and attendance and managing job abandonments, became involved as Amazon had sent Plaintiff two job abandonment emails. (*Id.*, ¶ 52). Amazon policy defines job abandonment as occurring when an associate does not show up for work for three consecutive days without being in contact. (*Id.*, ¶ 43).

Plaintiff's case was randomly assigned to Kiara Chevalier, who reviewed Plaintiff's employment, documented her findings that Plaintiff had not responded to Amazon's outreaches, had missed 8 shifts, and had no open DLS cases. (*Id.*, ¶ 55). On June 10, 2021, Amazon accepted that Plaintiff had abandoned her job, sending her an acknowledgement that her employment had ended. (*Id.*, ¶ 58). Plaintiff did not appeal that acceptance internally and did not contact anyone at Amazon to inquire as to whether the decision could be appealed or whether there had been an error of some kind. (*Id.*, ¶ 62). Instead, Plaintiff contacted an employment attorney on June 14, 2021, four days after her receipt of the termination notice and one business day after receiving notification of her ability to appeal the termination. (*Id.*, ¶ 63).

Plaintiff does not know who at Amazon made the final decision or how the decision was made to terminate her employment for job abandonment.[2] Plaintiff does not allege that any employee was treated more favorably than she was while she was employed by Amazon. (*Id.*, ¶ 75; 77-79). Plaintiff does not allege that she made a complaint of discrimination while she was employed by Amazon. (*Id.*, ¶ 75, 75-79).

> **B.   Plaintiff Files a Charge with the FCHR Complaint, Takes it to Hearing, and the ALJ Finds that Amazon Did Not Discriminate or Retaliate Against Her.**

On or about July 22, 2021, Plaintiff filed a charge of discrimination against Amazon ("Charge") with the FCHR. (*Id.*, ¶ 66). On or about October 20, 2021, Plaintiff filed an amended charge of discrimination against Amazon (the "Amended Charge"). (*Id.*, ¶ 66). The Amended Charge asserted that Amazon committed acts of employment discrimination and retaliation, in violation of the Florida Civil Rights Act ("FCRA") and the ADA, by failing to accommodate her disability and by terminating her employment. (*Id.*, ¶ 67).

On January 24, 2022, the FCHR issued its Notice of Determination, stating that it had "determined that there is no reasonable cause to believe that an unlawful employment practice occurred" ("Notice of Determination"). (*Id.*, ¶ 69). The Notice of Determination informed Plaintiff of her right to request an administrative hearing by filing a Petition for Relief. (*Id.*, ¶ 70). On February 9, 2022, Plaintiff filed a Petition for Relief with the FCHR. (*Id.*, ¶ 71). On February 14, 2022, the FCHR transmitted the Petition for Relief to the Division of Administrative Hearings ("DOAH") and requested that DOAH assign the matter to an Administrative Law Judge to conduct all necessary proceedings and submit recommended findings to the FCHR. (*Id.*, ¶¶ 72-73).

---

[2] *See* SOF at Ex. B; Pl. Dep. 174:7-21.

5

A final evidentiary hearing took place on August 29, 2022, before Administrative Law Judge John G. Van Laningham (the "Final Hearing"). (*Id.*, ¶ 74). Four witnesses testified at the Final Hearing, including Plaintiff, Ms. Williams, Jamie Weiss, and Naike Gabriel. (*Id.*, ¶¶ 74-77).

On November 16, 2022, the FCHR entered its Final Order Dismissing Petition for Relief ("FCHR Final Order"). (*Id.*, ¶ 78). The FCHR Final Order states that the ALJ's factual findings were supported by "competent substantial evidence" and the ALJ's "application of the law to the facts" resulted "in a correct disposition of the matter." (*Id.*, ¶ 79). On December 27, 2022, the United States Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights in which it adopted the findings of the FCHR. (*Id.*, ¶ 80).

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). When, as is the case here, the non-moving party bears the burden of proof on an issue, the moving party need not offer affidavits negating the opponent's claim. *Id.* Instead, the moving party may discharge its burden by showing the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once a movant meets its burden, the non-moving party must "go beyond the pleadings," and by affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific evidence showing there is a "genuine issue for trial." *Id.* at 324. It is the non-moving party's obligation to come forward with *specific facts*, not "mere allegations or denials of his pleadings." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome summary judgment]." *Id*. at 252; *see also*, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987) ("Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer").

6

"[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Celotex*, 477 U.S. at 322).

IV.    **ARGUMENT**

    A.    **The Court Should Grant Judgment to Amazon Because Collateral Estoppel Bars Plaintiff's ADA Claims (Counts III, IV, and V) as the Factual Issues Underlying Those Claims Were Fully Litigated Before the ALJ.**

The doctrine of collateral estoppel bars Plaintiff's ADA claims. "Collateral estoppel, or issue preclusion, requires that once a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the same issue on a different cause of action between the same parties." *See Barrington v. Fla. Dep't of Health*, 112 F. Supp. 2d 1299, 1303 (M.D. Fla. 2000). Federal courts must give the same preclusive effect to state court judgments as would be given in state court. *See* 28 U.S.C. § 1738; *Kremer v. Chem Constr. Corp.*, 456 U.S. 461, 466 (1982). When a state agency acts in a judicial capacity and resolves factual issues of fact before it "which the parties have had an adequate opportunity to litigate, courts give the agency's fact-finding ***the same preclusive effect*** to which it would be entitled in the state courts." *Quinn*, 330 F.3d at 1329; *McCrimmon v. Daimler Chrysler Corp.*, No. 6:05-cv-10-Orl-19DAB, 2005 WL 8159946, *4 (M.D. Fla. Nov. 9, 2005). "Giving preclusive effect to administrative fact-findings . . . not only serves the parties' interest in avoiding the re-litigation of issues and the public's interests in conserving judicial resources, but also serves the value of federalism by eliminating the chance that the federal forum reaches a conflicting result from the administrative agency or state court." *Quinn*, 330 F.3d at 1329.

For estoppel to apply, an identical issue must be fully litigated by the same parties or their privies and a final decision rendered by an administrative body or court of competent jurisdiction. *McCrimmon*, 2005 WL 8159946, at *5 (Section 1981 claims barred by collateral estoppel as issues were previously adjudicated by state ALJ); *Makere v. Allstate Ins. Co.*, 3:20-CV-905-MMH-JRK, 2021 WL 424349, at *9 (M.D. Fla. Feb. 8, 2021) (Title VII claims barred by collateral estoppel where following an investigation of his claims by the FCHR, plaintiff challenged the agency's findings and was afforded an evidentiary hearing before an ALJ who upheld agency's determination). Notably, when the FCHR acts in a judicial capacity and resolves issues of acts

7

properly before it which the parties have had an adequate opportunity to litigate, as is the case here, federal courts give the agency's fact-finding the same preclusive effect to which it would be entitled in the state courts, even if the fact-finding was not reviewed by a state court. *See Quinn*, 330 F.3d at 1328-29 (citing *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799 (1986)).

The issues presented and resolved during the administrative proceedings, involve the same parties, are identical to the issues in Counts III – V; namely, whether Amazon discriminated against Plaintiff based on her alleged disability and/or retaliated against her. The fact that Plaintiff brought her claims before the FCHR under state law; i.e., the FCRA and not the ADA, is irrelevant. Plaintiff's burden of proof on her FCRA and ADA claims are the same. *Gombosh v. Univ. of Miami*, 21-23525-CIV, 2022 WL 18584337, at *5 (S.D. Fla. Mar. 8, 2022) (FCRA and ADA claims "are nearly identical" and both are analyzed under same framework); *Beem v. Ferguson*, 713 F. App'x 974, 983 (11th Cir. 2018) ("[i]ssues are 'sufficiently identical' when their elements and requirements 'closely mirror' each other"). Accordingly, this Court should apply the doctrine of collateral estoppel to Counts III – V and grant judgment to Amazon as to them.

> **B.   Even if the Court Were to Determine Plaintiff Is Not Estopped from Pursuing Her ADA Claims, Amazon Is Still Entitled to Summary Judgment on Those Claims Because Plaintiff Is Not Disabled and Amazon Did Not Discriminate Against Plaintiff**

Plaintiff cannot show that she is disabled, is a qualified individual, or that she was discriminated against because of her alleged disability. Nor can she show that the real reason for her termination was her (supposed) disability. The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To establish a prima facie case for disability discrimination, a plaintiff must produce sufficient evidence to permit a jury to find that she: (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019). If a plaintiff meets her *prima facie* burden, the burden shifts back to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment decision. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2002), citing *Chapman v. Al. Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). The employer's burden is "merely one of production," and "it need not persuade the court that it was actually motivated by the proffered reasons." *Chapman*, 229 F.3d at 1024. Once the employer meets its burden, any presumption of discrimination is eliminated, and the plaintiff must come forward with evidence sufficient to permit a reasonable

factfinder to conclude that the reasons given by the employer were pretextual—that is, (1) the reasons were false, and (2) "discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2752 (1993).

Ultimately, for Plaintiff to prove that discrimination was the real reason for Amazon's actions, she must prove that "but-for" her disability, Amazon would not have terminated her employment. *See Jones v. Aaron's Inc.*, 748 F. App'x 907, 914 (11th Cir. 2018), citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996).

### 1. Plaintiff Was Not Disabled

Marrero was not disabled under the ADA. To benefit from protection under the ADA, a plaintiff must first establish that she is disabled. *See, e.g.*, *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263-64 (11th Cir. 2007). To qualify as disabled under the ADA, a plaintiff must have either: (A) a physical or mental impairment that substantially limits one or more major life activities, (B) a record of such an impairment, or (C) [be] regarded as having such an impairment.[3] *Id. See also* 42 U.S.C. § 12102(1). Further, "[a]n employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." *Booth v. GTE Fed. Credit Union*, No. 8:21-cv-1509-KKM-JSS, 2021 WL 5416690, *4 (M.D. Fla. Nov. 20, 2021), citing *EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019). *See Lewis v. Florida Default Law Group, P.L.*, No. 8:10–cv–1182–T–27EAJ, 2011 WL 4527456, *5 (M.D. Fla. 2011) ("the fact that Lewis could not perform those functions for a period of one to two weeks does not mean her [flu] systems 'substantially limited' those activities. As such, Lewis did not have an 'actual' disability under the ADA.").

The evidence does not show that the gum infection from which Marrero suffered, and for which she underwent dental treatment, substantially limited any major life activities. As at least one court has held, "it is clear that periodontitis is not a 'handicap,'" under state law analogous to the ADA. *Kuspa v. Commercial Carriers, Inc.*, No. 205615, 1999 WL 33447022 at *2 (Mich. App., April 16, 1999). Further, after visiting her dentist on April 12, 2021, Plaintiff continued to work at all times while she had the infection right up until the date of her teeth extraction on May 14. 2021. (SOF ¶ 10). After the extraction, Plaintiff had a few limitations (*e.g.*, limiting physical

---

[3] Plaintiff's counsel has indicated that Plaintiff is only pursuing an actual disability claim, not a "record of" or "regarded as" claim. Regardless, Plaintiff has neither a record of a disability nor was she regarded as disabled.

9

activity and avoiding dust), but these were garden-variety restrictions, common to most surgical procedures. Indeed, less than one-week from the date of her surgery, Plaintiff resumed working as a driver for Lyft. (*Id.*, ¶ 30.). Further, at her two-week follow-up appointment, Dr. Lujan described her as healing well and wrote a note indicating she could return to work.  Accordingly, Plaintiff did not have a qualifying "disability" and her ADA claims fail on that basis as a matter of law.

### 2. Plaintiff Was Not a Qualified Individual With A Disability

Plaintiff was unable to perform the essential functions of her job; and therefore, she is not a qualified individual with a disability under the ADA. In addition to having a disability, a plaintiff under the ADA must also establish that she is a "*qualified* individual." *See Greenberg*, 498 F.3d at 1263. The term "qualified," in this context "means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Fundamentally, the ADA covers people who can perform their essential job functions in the present or immediate future, and, thus, requests for indefinite leave so an employee can work "at some uncertain point in the future" are inherently unreasonable. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003).

Plaintiff was unable to perform the essential function of her job because she was not physically present at work. *See Garrison v. City of Tallahassee*, 664 F. App'x 823, 827 (11th Cir. 2016) (holding that the district court committed no error in concluding that the plaintiff was unable to perform an essential function of her job, full-time physical attendance). Plaintiff testified that her core duties included counting merchandise and lifting packages, which could not be done from home. Indisputably, physical presence was an essential function of Plaintiff's job. Yet, Plaintiff did not return to work on May 29, 2021 or physically appear for *any* of her next scheduled shifts through June 10, 2021. Further, Plaintiff also testified that she is *still* unable to perform the essential functions of her position as a Fulfillment Associate. (*Id.*, ¶ 65.). Therefore, taking Plaintiff's own testimony as true the May 28, 2021 note was a request for further leave, she effectively requested an accommodation of open-ended, indefinite leave. That request is unreasonable as a matter of law and cannot render her a qualified individual with a disability. Thus, her ADA claims fail as a matter of law on this basis as well.

Alternatively, the May 28, 2021 note was a request for further leave, and taking Plaintiffs own testimony as true, she effectively requested an accommodation of open-ended, indefinite leave. That request is unreasonable as a matter of law and cannot render her a qualified individual with a disability. Thus, her ADA claims fail as a matter of law on this basis as well.

        **3.**        **Amazon Did Not Terminate Plaintiff *Because* Of Her Alleged Disability**

Amazon terminated Plaintiff's employment when she abandoned her job. Without question, job abandonment is a legitimate, non-discriminatory reason for terminating an employee. *See Anderson v. JPMorgan Chase & Co.*, 418 F. App'x 881, 884 (11th Cir. 2011) (plaintiff's failure to return to work was legitimate, non-retaliatory reason for termination), citing *Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir.1984); *Perez v. Brands Mart Serv. Corp.,* No. 10–61203–CIV, 2011 WL 3236022, at *11 (S.D. Fla. July 28, 2011) (job abandonment based on the plaintiff's refusal to perform assigned tasks was legitimate, non-discriminatory basis for termination); *Egbarin v. Am. Express Co.*, 451 F. Supp. 2d 413, 423 (D. Conn. 2006) (job abandonment is a legitimate, non-discriminatory basis for termination of plaintiff); *Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*, No. 02 Civ. 6493(RJH), 2005 WL 2453078, at *19-22 (S.D.N.Y. Sept. 30, 2005) (job abandonment is a legitimate business reason for termination).

Here, the documents provided by Plaintiff's dentist returned her back to work, and there is no reason they should have been interpreted otherwise. Thus, Plaintiff's failure to return to work met all of the criteria for job abandonment. Plaintiff's employment ended due to her own inaction, *not* because of disability-based animus on Amazon's part. Plaintiff's disability discrimination claim fails as a matter of law on that basis.

        **4.**        **Amazon Accommodated Plaintiff and, Therefore, Is Entitled to Judgment on Her Failure to Accommodate Claim.**

Amazon reasonably accommodated Plaintiff to the extent she required time off from work to manage her dental health. To prevail on a failure-to-accommodate claim under the ADA, a plaintiff must prove by a preponderance of the evidence that (1) she was a qualified individual with a disability; (2) she made a specific request for a reasonable accommodation; and (3) the employer failed to provide a reasonable accommodation or engage in the requisite interactive process to identify a reasonable accommodation. *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020).

Here, Amazon did not fail to accommodate Plaintiff. The undisputed evidence is clear that Amazon granted Marrero's initial request for a leave of absence from May 14 through May 28, 2021, as certified by her dentist.. Following that increment, Amazon did not deny any request for accommodation. Indeed, Plaintiff never specifically requested an accommodation in the form of additional leave or otherwise, and the undisputed evidence reflects that the documents provided by Plaintiff's dentist returned her back to work, consistent with the dates already noted in her case. When Plaintiff failed to return, Amazon attempted to contact her on multiple occasions, and she failed to respond, even up to and including her post-termination appeal. Thus, the failure in communication belongs entirely to Plaintiff, not Amazon. Assuming *arguendo* that the May 28, 2021 note was a request for a leave extension (again, it was not), at best, the request was one for open-ended, indefinite leave, which is unreasonable as a matter of law. *See Wood*, 323 F.3d at 1314. Accordingly, Plaintiff's failure to accommodate claim fails on that basis as well.

### C.   Amazon Did Not Retaliate Against Plaintiff and, Therefore, the Court Should Grant Judgment to Amazon on this Claim.

Plaintiff's retaliation claim fails because Plaintiff did not engage in any statutorily protected activity, and her employment ended for the simple reason that she abandoned her job on her own free will. To establish a *prima facie* case of retaliation under the ADA, Plaintiff must show "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) the adverse action was causally related to the protected expression." *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (alteration adopted; citation and quotation marks omitted). "Ultimately, the employee must prove that 'the desire to retaliate was the but-for cause of the challenged employment action.'" *Mastaw v. West Florida Medical Center Clinic, PA*, No. 22-12202, 2023 WL 5426757, *4 (11th Cir. Aug. 23, 2023), quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517, 2528 (2013).

First, Plaintiff's retaliation claim fails because neither she nor her dentist on her behalf engaged in statutorily protected activity. Dr. Lujan's May 28, 2021 note did not constitute protected activity because he released Marrero to return to work and did *not* request an extension of leave as an accommodation or otherwise. Furthermore, there is simply no evidence that the alleged "desire to retaliate was the but-for cause" of Plaintiff's employment ending. *Mastaw*, 2023 WL 5426757, *4. Rather, the leave certified by Plaintiff's dentist expired and Plaintiff failed to return to work. Plaintiff had no open accommodation case, and there was nothing on file to support her continued absence. Nevertheless, Amazon attempted to contact Plaintiff on multiple occasions

to warn her that her job was in jeopardy and she failed entirely to respond. Accordingly, Plaintiff's employment ended due to her own inaction, *not* because of retaliatory animus on Amazon's part. *See Hills v. Wal-Mart Stores, Inc.*, No. 08–23197–CIV, 2010 U.S. Dist. LEXIS 44719, at *6 (S.D. Fla. May 6, 2010); *see Carlisle v. Sallie Mae, Inc.,* No. 5:05cv188, 2007 U.S. Dist. LEXIS 3268 (N.D. Fla. Jan. 17, 2007) (employee voluntarily abandoned job when she did not show up for work and failed to respond to employer's letter regarding voluntary resignation). Amazon considered the information before it and reasonably concluded Plaintiff abandoned her job.

> **D.    Amazon Is Entitled Summary Judgment on Plaintiff's FMLA Interference Claim (Count I) Because The Undisputed Record Establishes That Plaintiff Did Not Have a Serious Health Condition Under The FMLA and Was Not Denied A Benefit To Which She Was Entitled**

Plaintiff's FMLA interference claim fails because Plaintiff cannot establish that she was denied any benefit under the FMLA to which she was entitled. More specifically, Amazon approved Plaintiff for all the FMLA leave her dentist certified that she needed in connection with her pre-planned dental procedure, and Plaintiff never submitted further documentation to support a request for additional FMLA leave. Additionally, Plaintiff did not have a serious health condition sufficient to trigger FMLA coverage.

"Among the substantive rights granted by the FMLA to eligible employees are the right to '12 workweeks of leave during any 12–month period . . . [b]ecause of a *serious health condition* that makes the employee unable to perform the functions of the position of such employee,' 29 U.S.C. § 2612(a)(1), and the right following leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position, 29 U.S.C. § 2614(a)(1)." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001). To succeed on an FMLA interference claim, the plaintiff must demonstrate that she was entitled to a benefit denied by the employer. *Id.* at 1206-07.

> **1.    Plaintiff Did Not Have A "Serious Health Condition"**

As an initial matter, Plaintiff's FMLA interference claim fails because she cannot establish that she had a "serious health condition" sufficient to trigger coverage under the Act. *See* 29 U.S.C. § 2612(a)(1)(D). In turn, a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(d). The FMLA regulations specifically reflect that dental conditions such as *periodontal*

*disease* ordinarily *do not meet the definition of a serious health condition* under the FMLA. 29 CFR § 825.113(d). The same rationale applies to routine complications such as dry sockets. *See Flanagan v. Keller Products, Inc.*, 2002 WL 313138, **6-8 (D.N.H. Feb. 25, 2002) (granting summary judgment to employer on FMLA claim holding that plaintiff did not have a "serious health condition" under the FMLA when she developed a dry socket causing a "longstanding infection" and "significant pain" necessitating seven visits to the dentist or oral surgeon). Ultimately, the FMLA is designed to separate routine illnesses from chronic, more serious health conditions. *Id.* at *8.

In this case, Plaintiff's dental condition did not rise to the level of serious health condition. Indeed, the undisputed evidence reflects that Plaintiff had a gum infection (periodontitis), a condition that "wasn't serious" with an expected duration of three to four weeks for treatment and recovery. Even if Amazon was notified about the alleged dry socket for which Plaintiff sought treatment on June 8, 2021, which Amazon was not, Dr. Lujan testified that a dry socket is a minor complication, that Plaintiff started feeling better thereafter, and that she required no further treatment. Plaintiff also resumed performing work as a Lyft driver shortly thereafter. Accordingly, Plaintiff's FMLA interference claim fails because she did not have a "serious health condition" as a matter of law.

### 2. Amazon Granted Plaintiff All FMLA Her Dentist Certified

Even if Plaintiff had a "serious health condition"—she did not—her FMLA interference claim still fails because Amazon granted her all FMLA requested that was certified by her dentist. It is well established that "[a]n employer may require that a request for [FMLA] leave . . . be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a).

Dr. Lujan's May 14, 2021 note stated that Plaintiff had multiple extractions and sutures and "need[ed] to rest and return in 2 weeks." (SOF ¶ 20.) Amazon provided Plaintiff with two weeks' leave, in accordance with her dentist's note. Amazon granted all the time off requested in her doctor's May 14, 2021 note. Upon conclusion of the approved leave, Plaintiff's dentist returned her back to work, and neither Plaintiff nor her dentist ever provided further documentation in support of any additional leave. Quite logically, there can be no FMLA interference when an employer did not actually deny leave time. *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020) (explaining that there can be no FMLA interference when employee received all FMLA

14

leave she requested, and employer does not actually deny leave). Because Plaintiff cannot establish that Amazon denied any FMLA benefit that was properly certified by her dentist, her FMLA interference claim fails as a matter of law on this independent basis as well.

### E. Amazon Is Entitled To Summary Judgment On Plaintiff's FMLA Retaliation Claim (Count II) Because Plaintiff Cannot Establish Any of The Required Elements For A Prima Facie Case of FMLA Retaliation

Summary judgment should also be granted on Plaintiff's FMLA retaliation claim because it fails as a matter of law on multiple levels. To prevail on an FMLA retaliation claim Plaintiff "must demonstrate that [the] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207. In the absence of direct evidence of the employer's intent, the court applies the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas* for evaluating Title VII discrimination claims. *Id.*, citing *Brungart v. BellSouth Telecomm. Inc.,* 231 F.3d 791, 798 (11th Cir. 2000). Here, Plaintiff has no direct evidence of retaliation. As such, Plaintiff must proceed via the burden-shifting method of proof.

#### 1. Plaintiff Cannot Establish A *Prima Facie* Case of FMLA Retaliation

Plaintiff's FMLA retaliation claim fails because she cannot establish multiple prongs of the *prima facie* case. A *prima facie* case of FMLA retaliation requires a plaintiff to show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse decision; and (3) the decision was causally related to the protected activity. *Mastaw,* 2023 WL 5426757 at *3. If the plaintiff successfully makes a *prima facie* showing, the burden shifts to the employer to articulate a legitimate reason for the adverse action. *Id.* If the employer does so, the employee must show that the proffered reason is false and that the real reason is retaliation. *Id.,* at *4. Further, "the employee must prove that 'the desire to retaliate was the but-for cause of the challenged employment action.'" *Id.* (citation omitted).

Here, Plaintiff cannot make out a *prima facie* case of FMLA retaliation because she did not engage in statutorily protected activity. As noted above, Dr. Lujan's May 28, 2021 note released Plaintiff to return to work and did *not* request an extension of her FMLA leave. (*Id.,*) Neither Plaintiff nor her dentist ever provided further documentation in support of any additional leave. Plaintiff cannot establish facts to support the causation prong of her claim because there is simply no evidence whatsoever of retaliatory animus. Rather, the leave certified by Plaintiff's dentist expired, there was nothing on file to support her continued absence, and Plaintiff failed to

15

return to work. Nevertheless, Amazon contacted Plaintiff on multiple occasions, to no avail, to warn her that her job was in jeopardy. Yet, Plaintiff failed entirely to respond. Plaintiff's employment ended due to her own inaction, *not* because of retaliatory animus on Amazon's part.

Plaintiff abandoned her job under Amazon's job abandonment policy. An employer's policy that requires employees to call in to work when hey will be absent is clearly consistent with the FMLA because the regulations themselves require that employees give notice of the need for unforeseeable leave as soon as practicable. *See Spraggins v. Knauf Fiber Glass GmbH, Inc.*, 401 F. Supp. 2d 1235, 1239-40 (M.D. Ala. 2005) (holding that FMLA "allows an employer to require notice one hour before the employee's shift begins, as long as it is reasonable to expect the employee, under the individual circumstances, to give such notice."). Because Plaintiff cannot establish a *prima facie* case, her FMLA retaliation claim fails as a matter of law.

### 2. Amazon Proffered Legitimate, Non-Retaliatory Reasons for Its Employment Actions for Which There Is No Evidence of Pretext

Plaintiff cannot offer any evidence of pretext as Amazon had legitimate, non-retaliatory reasons for terminating her employment. Pretext can be shown by "either directly persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). Plaintiff's disagreement with Amazon's procedures is insufficient to establish pretext. *Chapman,* 229 F.3d at 1030 (11th Cir. 2000) ("Plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer."). Plaintiff must show but-for causation in order to prevail. *Mastaw*, 2023 WL 5426757 at *4.

Here, the undisputed evidence establishes that Plaintiff was terminated due to job abandonment consistent with Amazon's policies. Plaintiff's job abandonment was reviewed and processed by an offsite company representative who did not know Plaintiff, had never visited MIA-1, and who had no reason to harbor retaliatory animus towards Plaintiff. Indeed, the job abandonment process was triggered *after* Plaintiff ignored multiple communications from Amazon requesting that she immediately respond or contact Amazon. Plaintiff did not respond to Amazon's outreaches, even though she received the communications and understood that they were important. Plaintiff not only ignored Amazon's "important" communications pertaining to job abandonment, but she also failed to appeal her termination despite notified of her ability to appeal her termination and instructions for doing so. Instead, the next business day after she received

notification of her right to appeal, Plaintiff engaged an attorney to file a charge of discrimination against Amazon. Indeed, after the expiration of the appeal period, Plaintiff contacted Amazon to obtain its corporate address – in order to serve Amazon with her charge of discrimination. For these reasons, the Court should grant judgment to Amazon on Plaintiff's FMLA retaliation claim.

## V.     CONCLUSION

For each of the foregoing reasons, Amazon is entitled to summary judgment on all of the claims alleged in Plaintiff's Complaint.

**DATED**: November 16, 2023

Respectfully submitted,

*/s/ Miguel A. Morel*
Miguel A. Morel (FBN 89163)
E-mail: mamorel@littler.com
Sinead D. Motta (FBN 115438)
E-Mail: sdaly@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
305.400.7500 (Tel)
305.675.8497 (Fax)

*Attorneys for Defendant*
*Amazon.com Services LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of November 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                */s/ Miguel A. Morel*
                                                  Miguel A. Morel

## SERVICE LIST

**COUNSEL FOR PLAINTIFF:**
Nathaly Saavedra, Esq.
Florida Bar No.: 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Florida Bar No.: 115784
Email: juan@peregonza.com
Jocelyn R. Rocha, Esq.
Florida Bar No.: 1039302
Email: jocelyn@peregonza.com
PEREGONZA THE ATTORNEYS, PLLC
5201 Blue Lagoon Drive, Suite 290
Miami, FL 33126
Telephone: (786) 650-0202

**COUNSEL FOR DEFENDANT:**
Miguel A. Morel, Esq.
Florida Bar No.: 89163
E-mail: mamorel@littler.com
Sinead D. Motta (FBN 115438)
E-Mail:  sdaly@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, Florida 33131
Telephone: (305) 400-7500
Facsimile:  (305) 603-2552