UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:23-CV-20601-CMA

MILAINE MARRERO,

Plaintiff,

v.

AMAZON.COM SERVICES LLC,

Defendant.

_____/

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, MILAINE MARRERO, by and through her undersigned counsel, hereby responds to Defendant's Motion for Summary Judgment, ECF No. 18. In support of her Response, Plaintiff states as follows:

## I.  INTRODUCTION

Plaintiff brings claims of discrimination, failure to accommodate, and retaliation under the ADA as well as claims for Defendant's failure to adhere to the FMLA provisions. Defendant employed Plaintiff for approximately 18 months when she was diagnosed with periapical abscess, which was caused by an infection that spread from the tooth's pulp to the surrounding tissues. This condition caused Plaintiff to experience severe tooth pain, swelling, and sensitivity and resulted in several dental procedures, which forced her to miss work temporarily. Plaintiff dutifully notified Defendant about her condition and need for leave. Despite her diagnosis and complications, Plaintiff could still perform the essential functions of her position with an accommodation. Defendant moves this Court to grant summary judgement on all three claims. Summary judgment is only appropriate if a case is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Plaintiff respectfully asks this Court to deny

Defendant's Motion on all counts as it fails to demonstrate that there are no disputed facts; and, as a matter of law, Defendant is not entitled to judgment.

## **MEMORANDUM OF LAW**

## II.  **SUMMARY JUDGMENT - THE APPLICABLE LEGAL STANDARD**

Summary Judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. 242 at 248.

The moving party bears the burden of meeting this exacting standard. *Id.* "The moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." *Hickson Corp., v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion. *Id.* "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007).

However, the non-moving party must rely on more than conclusory statements of allegations unsupported by facts. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Harris*, 127 S. Ct. at 1776. In other words, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## IV. ARGUMENT

### A.  The FCHR's Orders Are Not Binding on This Court

In its Motion for Summary Judgment, Defendant asserts that "[t]he doctrine of collateral estoppel bars Plaintiff's ADA claims." ECF No. 18 at 7. However, because the U.S. Supreme Court and Eleventh Circuit have "consistently recognized . . . that Congress did not intend unreviewed state administrative proceedings to have preclusive effect over" claims such as Plaintiff's, Plaintiff is entitled to maintain the instant action *de novo* following the FCHR's determination. *Bishop v. City of Birmingham Police Dep't.*, 361 F.3d 607, 610 (11th Cir. 2004); *see Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986).

"As a general matter, findings of state administrative agencies are given preclusive effect by federal courts." *Gatewood v. Unlimited Path, Inc.*, 5:18-cv-66-MCR-GRJ, 2019 WL 920912, at *2 (N.D. Fla. Jan. 17, 2019). However, in *Elliott*, the U.S. Supreme Court held that determinations by a state agency do not preclude a plaintiff from litigating Title VII claims. *Elliott*, 478 U.S. at 796-798. Notably, in its Motion, Defendant cites to no supporting caselaw wherein a Title VII or ADA claim was barred by collateral estoppel. Moreover, Defendant misrepresents to the Court that the plaintiff's "Title VII" claims in *Makere* were barred by collateral estoppel. MSJ at 7; *Makere v. Allstate Ins. Co.*, 3:20-CV-905-MMH-JRK, 2021 WL 424349. In *Makere*, the plaintiff brought claims under 42 U.S.C. § 1981 and the Florida Civil Rights Act—not Title VII. *Makere*, 2021 WL 424349 at *2.

Contrary to Defendant's assertion that Plaintiff is precluded from initiating a civil action following a determination by a state administrative agency, the Eleventh Circuit has long upheld the following principle:

> The clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue preclusion only if rendered or reviewed by a court…. In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them.

*McInnes v. Cal.*, 943 F.2d 1088, 1093-94 (9th Cir. 1991); *accord Crapp v. City of Miami Beach*, 242 F.3d 1017, 1022 (11th Cir. 2001); *accord Bishop*, 361 F.3d at 610. Indeed, "although a state administrative agency's findings are entitled to preclusive effect in § 1983 proceedings, a different result is required for Title VII claims." *Bishop*, 361 F.3d at 610.

Courts within the Eleventh Circuit and beyond have recognized that the Title VII exception carved out in *Elliott* extends to ADA claims such as Plaintiff's because "the ADA explicitly incorporates all of the enforcement powers, remedies, and procedures of Title VII." *Gatewood*, 2019 WL 920912, at *2 (citing *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 828 (6th Cir. 2013) (quoting 42 U.S.C. § 12117)). In *Gatewood*, the plaintiff was permitted to proceed with her ADA claim although the parties had attended an administrative evidentiary hearing before an Administrative Law Judge after the plaintiff appealed a "no reasonable cause" determination by the Florida Commission on Human Relations. *Id.* at *1. Here, as in *Gatewood*, "Plaintiff should be permitted to proceed with her ADA claim[s]." *Id.* at *3.

**B. Plaintiff survives summary judgment on her disability discrimination claim because there is a genuine issue of fact as to the legitimate, non-discriminatory reason for her termination and Plaintiff has elicited evidence which refutes Defendant's reason for termination.**

Defendant contends that Plaintiff cannot establish a prima facia case under the ADA/ADAAA and even if she did that, she cannot prove that discrimination was the "but for" reason for her termination. ECF No. 18 at 9, 10. On summary judgment, the analysis is "whether

the plaintiff has offered sufficient evidence to establish a genuine issue of discrimination.*" Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016) (*citing Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Thus, "the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*

### 1. Plaintiff was disabled within the meaning of the ADA

To receive the ADA's protections, a plaintiff must prove that she has a "disability"—i.e., that she has, had, or is regarded as having "a physical or mental impairment that substantially limits one or more major life activities...." 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g).  Plaintiff argues that Periodontal disease at an acute stage as the one she suffered from constitutes as a disability.

Under the ADAAA, "[t]he definition of disability ... shall be construed in favor of broad coverage ... to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4)(A). accordingly, "The question of whether an individual meets the definition of disability ... should not demand extensive analysis." 29 C.F.R. § 1630.1(c)(4). Rather, Congress's express intent was "that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations." ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-335, § 2(b)(5), 122 Stat. 3553, 3554. "Congress intended that the establishment of coverage under the ADA should not be overly complex nor difficult, and expected that the ADAAA will lessen the standard of establishing whether an individual has a disability...." *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (citations, alterations, and internal quotation marks omitted). Defendant contends that  Plaintiff has not demonstrated that she is disabled within the meaning of the ADA because  the evidence doesn't show that Plaintiff's condition substantially limited any major life activities. ECF No. 18 at 10.  The determination then

of whether plaintiff was actually disabled turns on whether her condition substantially limited one or major life activities.

"An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii); see also ADAAA § 2(b)(4) (stating Congress's purpose "to reject the standards enunciated by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), that the terms 'substantially' and 'major' in the definition of disability under the ADA 'need to be interpreted strictly to create a demanding standard for qualifying as disabled,' and that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.' "), the individual's ability to perform the activity is compared "to most people in the general population." 29 C.F.R.  § 1630.2(j)(1)(ii). The functional limitation required is lower than the standard applied prior to the ADAAA, and the analysis usually does not require medical, scientific, or statistical evidence. Id. § 1630.2(j)(1)(iv)–(v).4 Furthermore, "[a]n impairment that is episodic ... is a disability if it would substantially limit a major life activity when active," and "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as ... medication." Id. § 1630.2(j)(1)(vii); 42 U.S.C. § 12102(4)(E)(i); see also ADAAA § 2(b)(2) (stating Congress's purpose "to reject the requirement enunciated by the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) and its companion cases that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures ..."). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, *1350 walking,

standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). An impairment need only limit one major life activity to be a disability. Id. § 12102(4)(C).

Plaintiff has presented sufficient evidence in the form of Plaintiff's testimony, Dr. Lujan's testimony, and the medical records that Plaintiff's ability to work, eat or communicate was substantially limited compared to most people in the general population. Pl. SOF at ¶¶100-108. Specifically, when her condition began, Plaintiff experienced severe swelling and pain, was unable to eat, or talk. Pl. SOF at ¶¶100-108. The pain was so severe that she went to the emergency room. Id. Dr. Lujan testified as to Plaintiff's diagnosis, what periodontal disease was and how the same was treated and how the symptoms of the condition plaintiff was experiencing were limiting her ability to eat as well as communicate with others. Id. Taken as a whole, Plaintiff argues that there is a genuine issue of material fact as to whether Plaintiff's condition caused major life activities to be substantially limited as compared to the general population.

Furthermore, Plaintiff argues that the treatment of her condition also counts as a disability under the Act. Courts have found that if a medical condition that is not itself disabling nevertheless requires, in the prudent judgment of the medical profession, treatment that is disabling, then the individual has a disability within the meaning of the Act, even though the disability is, removed from the condition. CITE

Here, Dr. Lujan testified as the potential effects of the periodontal disease and if left untreated how it could become life threatening. Pl. SOF at ¶ 105. He also testified in depth about his treatment plan for Plaintiff and how the extraction of all of her teeth was a necessary action and how the same limited Plaintiff until the treatment was completed. Pl. SOF at ¶¶106-108. From April 12, 2021, until the day of her termination, Plaintiff was in pain and suffering from an infection on her upper gums. Pl. SOF at ¶¶100-129. Furthermore, as a result of being on antibiotics for over

a month, Plaintiff developed digestive complications and was weak. Pl. SOF at ¶117. As a result of her termination, Plaintiff was unable to complete treatment and up until today she has no upper teeth which substantially limit her ability to eat, communicate with others and work. Pl. SOF at ¶100-142.  In sum, viewing the testimony regarding Plaintiff's condition in the light most favorable to Plaintiff, Plaintiff has established that her condition was an impairment that substantially limited major life activities, rendering her a person with an actual disability.

### 2.  **Plaintiff was a qualified individual**

Defendant contends that Plaintiff was unable to perform the essential functions of her job because she was not physically present at work and failed to return on May 29, 2021. ECF No. 18 at 11. In making this assertion, Defendant has overlooked the facts  and the law in an effort to mislead the Court.

First, the fact that Plaintiff was not present at her job does not render her unqualified. To be a qualified individual, a plaintiff must prove that he "can perform the essential functions of the employment position that such individual holds or desires[,]" *and that he can do so "with or without reasonable accommodation[.]*" 42 U.S.C. 12111(8)(emphasis added); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).

Defendant fails to mention that Plaintiff did in fact request her leave to be extended as an accommodation.  Starting on May 25, 2021, when Plaintiff was informed that her leave was approved until May 28, 2021,  Plaintiff made several requests for an accommodation to extend her leave as she was not able to return to work at that time. Pl. SOF at ¶¶123-131. Defendant also omits that it failed to consider Plaintiff's request for an extension all together and terminated Plaintiff before she was given the opportunity to heal. Pl. SOF at ¶¶123-142. it is undisputed that Defendant was aware of Plaintiff's request for an accommodation but that it failed to process the same. Pl. SOF at ¶¶123-134; 139-142.   Dr. Lujan testified  that had plaintiff been given the

opportunity to complete her treatment, she would not have any limitations that would have prevented her from going back to work. Pl. SOF at ¶143. Therefore, the evidence supports Plaintiff was qualified for the position.

3. **Defendant's decision to terminate based on attendance is, in itself, discriminatory based on Mrs. Marrero's disability**

Defendant's reason for termination, relate directly to Plaintiff's disability leave/accommodation requests which is in itself discriminatory.

It is undisputed that the only absences which were considered when Defendant reached the decision to terminate Mrs. Marrero were those absences between May 29, 2021 and June 10, 2021. Pl. SOF at ¶ 139. These absences were caused by Defendant's failure to process Plaintiff's request to extend her leave. By Defendant's own admission through several witnesses, as well as physical evidence, Plaintiff's disability, was, at minimum, one of the factors considered when deciding to terminate her employment. *Id.* Indeed, Ms. Williams testified that she reviewed all the notes on the LOA case No. 02008194. Pl. SOF at ¶ 134. This note, clearly reflected a request for an extension. Pl. SOF at ¶ 134. Specifically telling is that Ms. Williams' notes stated that Plaintiff had active punches when she closed the LOA pending which then triggered the Job abandonment task. *Id.* There is no consideration or concern by Defendant for *why* Mrs. Marrero had been contacting DLS to no avail since May 25, 2021; and no inquiry as to what, if any, accommodation can be made for her. Mrs. Marrero contends, based on the record evidence, that her disability leaves and request for extension of the same was the reason for her termination. This alone creates an issue of fact for the jury; and tends toward a finding of discrimination because all of the absences Mrs. Marrero had during that period were directly attributable to her disability and continued requests for accommodation in the form of leave.

4. **Plaintiff survives summary judgment on her claim for failure to accommodate because she has shown that she requested accommodations, Defendant knew of her disability, and her requests were denied.**

a. *Defendant discriminated against Mrs. Hyman when it denied her requests for leave due to her disability.*

Defendant contends that it did not fail to accommodate Plaintiff. ECF No. 18 at 13. Defendant contends that it granted Plaintiff's initial request for leave of absence from May 14, 2021 through May 28, 2021 as certified by her dentist. Id. However, Defendant fails to even address the fact that her initial request estimated her return to work day to be June 6, 2021 and how Defendant, failed to provide a return to work plan form after Dr. Lujan's certification form was provided or how Defendant arbitrarily limited and approved the leave until May 28, 2021. Pl. SOF at ¶¶109, 113, 114. Defendant also fails to address the multiple requests that Plaintiff made after May 25, 2021 to extend the leave past May 28, 2021. Pl. SOF at ¶¶123-132.

Under the ADA and ADAAA, an employer may not discriminate "against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). When used in this context, an employer discriminates when it denies a reasonable accommodation. *Holly v. Clairson Industries, LLC.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (citing 42 U.S.C. § 12112(b)(5)(A)). It is well settled law that a request for leave is an ***explicit*** request for an accommodation under the law. *Holly*, 492 F.3d at 1293; see also *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) ("the federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned ... that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future."); *Shannon v. City of Philadelphia*, No. 98-5277, 1999 U.S. Dist. LEXIS 18089, 1999 WL 1065210, at *6 (E.D. Pa. Nov. 23, 1999) ("[v]iewing the evidence in the light most favorable to [plaintiff], the court finds that a

reasonable jury could conclude that [plaintiff's] request for an additional three months of unpaid leave for medical treatment was a reasonable accommodation.").

Defendant's position that Amazon granted Marrero's initial request for leave as certified by her dentist is misleading. First, On May 11, 2021, Dr. Lujan submitted the Medical Certification form stating Plaintiff's treatment was as needed to restore her dental health. Pl. SOF at ¶¶ 113-114. Dr. Lujan checked off could not return to work. Id. Defendant did not provide a return to work plan date. Id.  Istead, Defendant noted in the system that the certification was incomplete but failed to communicate the deficiency to Plaintiff. Pl. SOF at ¶¶.  On May 24, 2021, Defendant's agent reviewed the case and without seeking clarification and despite specific guidelines defendant determined the Return to work day to be on May 28. Pl. SOF at ¶¶ 119-121.

Defendant contends that Plaintiff never specifically requested an accommodation in the form of additional leave. ECF No. 18 at 13. This contention however is directly contradicted by the undisputed evidence.

Defendant cannot dispute that Mrs. Marrero provided doctors' notes which covered every day for which she was absent which were undeniable requests for leave. Pl. SOF at ¶¶ 113, 117, 128. She followed Defendant's policies for requesting an accommodation as the notes were provided directly to the DLS department. Pl. SOF at ¶¶ 123-132 . Mrs. Marrero specifically made a request to extend her leave starting on May 25, 2021. Id. The indisputable evidence provides that Mrs. Marrero requested an extension on May 28, 2021 and that on that day, a DLS agent created a new case to address this request. Pl. SOF at ¶ 125. The evidence also shows that on May 28, 2021, Defendant received a medical document that stated "**the patient instructed to rest and return to the office in 3 weeks**". The problem is that Defendant did not even consider the requests for extending the leave. ("the doctor indicated that Plaintiff is able to return to work as of the date that they were evaluated on and that their follow up appointment was just going to be in

three weeks."). ECF No. 19 at 37. However, she should not have done that. The Request should not have been closed. This evidence is uncontroverted by Defendant. Pl. SOF at 37.

In its motion, Defendant fails to recognize that these requests were requests for disability accommodation, despite the fact that such requests are undeniably requests for an accommodation under the ADA and ADAAA. Nor does Defendant raise any defense to its failure to provide additional leave. There is no question that such a claim should be presented to a jury.

      a.  *Defendant wholly failed to engage in an interactive process with Mrs. Hyman*

The ADA's regulations state that: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).   The ADA and ADAAA certainly encourage and expect employers will engage in an informal interactive process with a disabled employee in order to determine what accommodations, if any, can be offered. See *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (citing *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)), 29 C.F.R. § 2630.2(o)(ii)(3). Such a duty is not triggered, however, unless an employee makes a specific request for an accommodation. *Spears v. Creel*, 607 Fed. Appx. 943, 950 (11th Cir. 2015) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir. 1999)).

Here, there is no question that Mrs. Marrero made several requests for an extension and made several attempts for Defendant to address her request. Pl. SOF at ¶¶ 123-132. Notwithstanding, despite Mrs. Marrero's countless calls explaining the nature of her condition and explicitly asking for the status of her request, Defendant utterly failed to review its own policies and processes to

ensure what accommodation could allow Mrs. Marrero to return to work. Pl. SOF at ¶¶133, 139-142.

Furthermore,  Plaintiff's requested extension for leave was possible. Defendant already has a policy of allowing employees to excuse absences with PTO or UPT without having to seek approval. Pl. SOF at ¶¶86-87. Because there is no evidence that Plaintiff's additional time off would constitute an undue burden on Defendant, Plaintiff has presented sufficient evidence that the request was reasonable.

By failing to engage in a sufficient interactive process, Defendant prevented itself from discovering whether Plaintiff was entitled to an accommodation or whether accommodation were, in fact, possible violating its obligations under the ADA. *See Mengine v. Runyon*, 114 F.3d 415, 420–21 (3d Cir.1997). *See Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1116 (9th Cir.2000) (en banc), rev'd on other grounds, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002); *Cravens*, 214 F.3d at 1020–21; *Fjellestad*, 188 F.3d at 952; *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317–20 (3d Cir.1999).

**C.  Plaintiff has produced evidence to convince a jury that his request for additional leave was a motivating factor to terminate.**

It is undisputed that Plaintiff engaged in statutorily protected activity by taking FMLA leave due to her own medical condition and then requesting an extension of the same as an accommodation. Pl. SOF at¶100-121. Defendant knew as early as May 25, 2021, that Plaintiff was looking for her already approved leave to be extended.  Pl. SOF at ¶ 109. Mrs. Marrero made a valid explicit request to extend the leave as a reasonable accommodation for her condition pursuant to the policies.   Defendant maintains a policy which states that if an exntesion of the leave is needed an employee should contact DLS to determine whether the same is eligible.  Pl. SOF at ¶¶ 85-99. Yet, Defendant failed to consider the request as a whole and Plaintiff's eligibility and instead closed out her case under the false premise that she had return to work. Therefore, Plaintiff survives summary

judgment based on Defendant's refusal to appropriately evaluate her request for accommodation and terminating Plaintiff shortly after her request was made ended.

Plaintiff need not prove that the proffered reason for her termination was false and that the "true reason" was illegal; she must only show evidence that her FMLA leave was a motivating factor Defendant considered when it terminated Plaintiff. *See Quigg*, 814 F.3d at 1237-38 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). A reasonable jury could find that Williams negligence to determine the Extension led to Plaintiff's termination. The Court should therefore **deny** Defendant's Motion and grant Plaintiff's Motion for Partial Summary Judgment on this issue or at the very least, permit a jury to hear the evidence.

## D. FMLA Interference

To prove FMLA interference, Plaintiff must demonstrate "that [she] was denied a benefit to which [she] was entitled under the FMLA" *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1266–67 (11th Cir.2008), and that she "has been prejudiced by the violation in some way." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), *see also* 29 U.S.C. § 2615(a)(1). Defendant contends that Plaintiff cannot show that she have a serious health condition under the FMLA or that she was denied a benefit. ECF No. 18 at 14. As an initial matter, while it now argues otherwise, Defendant has conceded implicitly Mrs. Marrero was an eligible employee with a qualifying serious health condition by granting her application for FMLA leave. Pl. SOF at ¶¶121, 122. Defendant's denial is not only unsupported by the record, it ignores the clear language of the DOL regulation, and Eleventh Circuit precedent.

### 1. Plaintiff suffered from a Serious Health Condition

Defendant's contention that Plaintiff's condition did not qualify as a serious condition under the FMLA lacks any merit. The FMLA defines a "serious health condition" as "an illness, injury,

impairment, or physical or mental condition that involves [[A]] in patient care . . . or [[B]] continuing treatment by a health care provider as defined in § 825.115". 29 C.F.R. § 825.113(a).

As required for existence of "serious health condition" under the objective standards set forth in Department of Labor (DOL) regulation, See 29 C.F.R. § 825.115(a) ,(c-e),  the undisputed evidence establishes that Plaintiff received "continuing treatment,"  for her periodontal disease from April 12, 2021 until June 9, 2021. Pl. SOF at ¶¶100-143, Although her condition may not have been "permanent", Dr. Lujan believed Plaintiff had a serious condition that in extreme cases can that if left untreated, the infection could spread to other parts of the body, cause bone destruction, and even create a life-threatening condition. Pl. SOF at ¶105. Courts have found that periodontal disease can be a serious medical condition that causes harm. *See Board v. Farnham*, 394 F.3d 469, 483 n.7 (7th Cir. 2005)( saying that "periodontal disease or gingivitis ... is a serious medical condition which is manifested by the loss of teeth."); *Rucano v. Koenigsmann*, No. 9:12-CV-00035, 2014 WL 1292281, at *10 (N.D.N.Y. Mar. 31, 2014) ("Defendants concede that periodontal disease is a serious medical condition, and we agree.") *but see  Moore v. Parham*, No. 1:16CV1519, 2017 WL 4118458, at *5 (E.D. Va. Mar. 23, 2017)( "periodontitis is not a serious medical need."); *Coward v. Clarke*, No. 7:20CV00702, 2022 WL 1018407, at *2 (W.D. Va. Apr. 5, 2022) ("[A] diagnosis of periodontitis does not in itself create a serious medical need[.]" (internal quotation marks omitted)).

It is undisputed that on April 12, 2021, Dr. Lujan diagnosed Plaintiff with periodontal disease. Pl. SOF at ¶¶101-104. Periodontitis is a disease that attacks the bone and surrounding structures which hold the tooth in place. Pl. SOF at ¶105. As  it progresses, the bone is increasingly damaged. Id. Left untreated, periodontitis can result in periodontal abscesses  and tooth loss. Id.  At that point, the teeth are often not salvageable absent advanced surgical procedures. Id.   Plaintiff's

condition required multiple extractions and close monitoring by her doctor. Pl. *SOF at ¶106.* Plaintiff's condition involved several follow up appointments with Dr. Lujan starting on April 12, 2021 though June 9, 2021. SUF at 101-143. Plaintiff was initially treated with antibiotics. *Id.* . . After 3 weeks, Plaintiff was scheduled for surgery. Pl. SOF ¶107. Per Dr. Lujan's direction, on May 14, 2021 Plaintiff was placed a period of incapacity for 10 consecutive, full calendar days pending an in person visit within 2 weeks days of the first day of incapacity.  Pl. SOF at ¶117-118. At the time, Dr. Lujan ordered a period of incapacity, Defendant reviewed and approved Plaintiff's FMLA paperwork wherein Dr. Lujan described Plaintiff's medical condition. Pl. SOF ¶¶121-122. As a matter of law, absence from work of more than three consecutive calendar days is required to qualify as "serious health condition" under FMLA.   Family and Medical Leave Act of 1993, §§ 101(11), 102(a)(1)(D), 29 U.S.C.A. §§  2611(11), 2612(a)(1)(D);  29 C.F.R. §  825.114(a)(2)(i).   *Carter v. Rental Uniform Service of Culpeper, Inc.*, 1997, 977 F.Supp. 753.   Labor And Employment Key Number 35.

Further, during the time of her incapacity, her condition did not improve to change qualification status under the Act. On May 26, 2021, Dr. Lujan determined that additional treatment was necessary.Pl. SOF at ¶128.  On June 8 ,2021 due to extenuating circumstances Dr. Lujan determined that a second in-person visit is needed within the 30–day period. Id.  The evidence establishes Plaintiff's condition became one that required multiple procedures.  SOF. Therefore, Plaintiff has presented sufficient evidence to establish that she did have a serious condition as a matter of law.

   2. *Defendant's actions or lack thereof after receiving notice of Plaintiff's qualifying need for leave constitute interference under the act.*

Defendant contends that it provided all FMLA requested leave as certified by her dentist. This contention is clearly controverted by the record evidence. At minimum, Plaintiff has presented

On April 30, Plaintiff made a request for leave from May 16, 2021 through June 6 2021. Pl. SOF at 109, 113, 114, 118. On May 3, 2021, Defendant certified that the requested leave would qualify as FMLA leave. Pl. SOF at ¶110-111. Dr. Lujan certified on May 14, 2021 Dr. Lujan certified that the extractions had been done and Plaintiff was required to come back for a follow up after 2 weeks. . Pl. SOF at ¶117. Defendant failed to follow its own policies as it did not provide the plan to return to work form nor did it informed Plaintiff that there was information missing. Pl. SOF at ¶114. Defendant further failed to confirm that Plaintiff was cleared to return to work and instead defendant arbitrarily determined that the note meant she could return to work after 2 weeks. . Pl. SOF at ¶121-122. Defendant's justification for requiring Plaintiff to return to work on May 29, 2021 was that the medical note from Dr. Lujan did not provide sufficient information to determine additional leave was needed after May 28, 2021. Although the note itself was not unequivocally clear that it referred to the Dr.'s office and not work Plaintiff contends that it was an obvious inference to draw from the information. This was not a circumstance where the medical note requesting time out of work was submitted in a vacuum with no other information. It was the same provider who signed the FMLA Certification and extended the leave. . Pl. SOF at ¶¶ 113-114. Nevertheless, Defendant  utterly failed to follow the requirements of the FMLA regulations.

In "any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee ... to ascertain whether leave is potentially FMLA-qualifying." *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 153 (3d Cir. 2015). In *Hansler*, an employee applied for intermittent FMLA leave two days per week, based on as yet undiagnosed diabetes and high blood pressure that was causing shortness of breath, nausea, and vomiting. Id. at 151-52. Although the employer denied the leave request, it did not inform the employee and fired her for taking the requested days off. Id. at 152. In overturning the district court's grant of the employer's motion to dismiss, the Third Circuit

Court of Appeals explained that the failure to follow the mandatory regulations on responding to an insufficient certification alleged a straightforward interference claim. The Court explained as follows:

> Significantly, the Department of Labor's regulations govern how employers are to respond to perceived deficiencies in employee notices generally, and in medical certifications in particular. While an employee seeking FMLA leave must "state a qualifying reason for the needed leave" and fulfill notice requirements, the employee "does not need to expressly assert rights under the Act or even mention the FMLA." 29 C.F.R. § 825.301(b). Instead, in "any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee ... to ascertain whether leave is potentially FMLA-qualifying." Id. § 825.301(a). In addition, an employer "shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." Id. § 825.305(c).

Id. at 153. The Court then held that "Lehigh Valley ignored these requirements and, instead, terminated Hansler without first notifying her that the request for leave had been denied. Assuming that she can prove she was denied benefits to which she was otherwise entitled, Hansler may premise her interference claim on these alleged regulatory violations." Id. at 156. The Court further analogized the claim to other interference claims permitted for an employer's failure to properly notify an employee of his/her substantive rights under the FMLA in violation of the regulatory requirements, thus preventing them from the opportunity to present a valid application. Id. at 157 (*citing Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 142 (3d Cir. 2004); *Ruder v. Pequea Valley Sch. Dist.*, 790 F.Supp.2d 377, 394 (E.D.Pa. 2011) (finding interference claim where the defendant's failure to advise plaintiff of his eligibility to take leave "rendered him unable to exercise his rights"); *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 496–97 (E.D.Pa. 2010) (finding interference claim where plaintiff alleged that "had she been informed that FMLA was an option for her absence, she would have taken her absence as FMLA leave")). "These modest

burdens imposed on employers help ensure that employees are equipped with at least basic information about the Act's requirements and have an opportunity to exercise their rights in a meaningful way. And to encourage employer compliance, the regulations provide injured employees with a cause of action for interference." Id. at 157.

Here, Defendant clearly interfered with Plaintiff's rights by failing to notify her that her doctor's note of May 11, 2021, did not provide sufficient information to conclude a date certain to return to work and failing to give her an opportunity to cure, before it arbitrarily decided the extraordinarily conclusory decision that she was able to return to work after May 28, 2021. See U.S. Department of Labor, WH1421 06/15: The Employer's Guide to The Family and Medical Leave Act, (2023) ("[w]henever an employer finds any medical certification 'incomplete' or 'insufficient,' the employer must give the employee a written notice stating what additional information is necessary to make the certification complete and sufficient"); U.S. Department of Labor, WH1506 06/15: The Employee's Guide to The Family and Medical Leave Act, (2015) ("[i]f your employer finds that necessary information is missing from your certification, it must notify you in writing of what additional information is needed to make the certification complete"). Plaintiff has presented sufficient evidence for a jury to find that that Mrs. Marrero availed herself of a protected right under the FMLA and that the Defendant interfered with those rights.

**E.  Plaintiff survives summary judgment on her claim for FMLA Retaliation because she has sufficiently demonstrated that she was terminated and her FMLA leave was a factor in Defendant's decision to terminate her employment.**

> 1.    *This Court should utilize the framework for mixed-motive case under White v. Baxter Healthcare Corp.*

Mrs. Marrero intends to raise a mixed-motive claim[1] and therefore argues that the correct framework the Court should use when evaluating his claims is that which was identified in *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) and adopted by the Eleventh Circuit in *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1236 (11th Cir. 2016). Because single-motive discrimination and mixed-motive discrimination are "theories of discrimination, as opposed to distinct causes of action," a plaintiff can argue one or the other when proving his/her prima facie case. *Quigg*, 814 F.3d at 1237 n.4. Under a mixed-motive framework, the Court must ask only "whether a plaintiff has offered evidence sufficient to convince a jury that (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action." *Id.* at 1239 (alterations in original). The Eleventh Circuit found that this framework best suited a mixed-motive theory because it does not ask the plaintiff to prove pretext when the employee is claiming that there were legitimate and non-legitimate reasons for termination. Using the *McDonnell Douglas* framework, in fact, places an employee in the precarious position of offering evidence demonstrating discrimination *and* disproving the employer's stated reason for termination. *See id.* at 1238.  Using this standard, Plaintiff only needs to show "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* at 1240 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

   2.  *Mrs. Marrero has produced evidence that she engaged in protected activity when she requested leave and that request was a motivating factor for Defendant's decision to terminate.*

---

[1] *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649-50 (6th Cir. 2012) (holding that the plaintiff gave adequate notice of her mixed-motive claims in response to defendant's motion for summary judgment).

Under *Quigg*, the issue at this stage of litigation is simple: Has Plaintiff demonstrated that there is a genuine issue of material fact as to whether an illegal reason was a motivating factor in Defendant's decision to terminate her employment? The answer is just as simple: Yes.

It is undisputed that Plaintiff engaged in statutorily protected activity by taking FMLA leave due to her own medical condition. Pl. SOF at¶100-121. Defendant knew as early as April 30, 2021, that Plaintiff had been diagnosed and was seeking leave for a few weeks as a result of her condition. Pl. SOF at ¶ 109. Defendant review the request and determine that the entire period the same would qualify under FMLA. Pl. SOF at ¶ 121-122. Plaintiff contends that the general policy was not even applied to her correctly given the fact the Defendant failed to request clarification on the return to date and instead arbitrarily determined a return to work date. Pl. SOF at ¶ 121 and 122. In largely the same vein, Mrs. Marrero made a valid explicit request to extend the leave as a reasonable accommodation for her condition.   Defendant maintains a policy which states that if an exntesion of the leave is needed an employee should contact DLS to determine whether the same is eligible.  Pl. SOF at ¶¶ 85-99. Yet, Defendant failed to consider the request as a whole and Plaintiff's eligibility and instead closed out her case under the false premise that she had return to work.  Therefore Plaintiff survives summary judgment based on Defendant's refusal to appropriately evaluate her request for accommodation and terminating Plaintiff shortly after her FMLA ended.

The evidence further establishes that Plaintiff suffered an adverse employment action because Plaintiff was terminated within 3 weeks of Plaintiff's FMLA request being approved. Pl. SOF at ¶142. Lastly, it is clear from the evidence that Plaintiff's FMLA leave was a motivating factor in Defendant's decision to terminate her.

In her deposition Williams and Schulz stated that they are  required to review the entire case of LOAs. Pl. SOF at ¶ 141. Further, Ms. Schulz testified that the reviews are needed in order

to prevent a termination being done by error. Pl. SOF at ¶ 141. Nevertheless, Williams stated that there were active punches when closing the LOA when that was not true. She also saw but failed to handle the request for Extension. Pl. SOF at ¶ 134.  Then Schulz notwithstanding all the errors stated that she reviewed and determine the request for termination could be completed. Pl. SOF at 105-109.

Again, Plaintiff need not prove that the proffered reason for her termination was false and that the "true reason" was illegal; she must only show evidence that her FMLA leave was a motivating factor Defendant considered when it terminated Plaintiff. *See Quigg*, 814 F.3d at 1237-38 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). A reasonable jury could find that the bias of Williams created the task and ended on termination. he Court should therefore ***deny*** Defendant's Motion and grant Plaintiff's Motion for Partial Summary Judgment on this issue or at the very least, permit a jury to hear the evidence.

## V. CONCLUSION

Based on the forgoing, Plaintiff requests that this Court ***deny*** Defendant's Motion for Summary Judgment as she has met her burden of showing a *prima facie* claim for discrimination and failure to accommodate under the ADA/ADAAA, and for FMLA interference and retaliation; and because Defendant has failed to demonstrate that there are undisputed facts. Further, as a matter of law, Defendant is not deserving of judgment in its favor.

Dated: <u>December 4, 2023</u>.          Respectfully submitted,

<u>/s/ Nathaly Saavedra</u>
Nathaly Saavedra, Esq.
Fla. Bar No. 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Fla. Bar No. 115784
Email: juan@peregonza.com
P. Brooks LaRou, Esq.

Fla. Bar No. 1039018
Email: brooks@peregonza.com
**PEREGONZA THE ATTORNEYS, PLLC**
5201 Blue Lagoon Drive, Suite 290
Miami, FL 33126
Tel. (786) 650-0202
Fax. (786) 650-0200

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on <u>December 4, 2023</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Nathaly Saavedra*
Nathaly Saavedra, Esq.

<u>**SERVICE LIST**</u>
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.: 1:23-cv-20601-CMA

Nathaly Saavedra, Esq.
Fla. Bar No. 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Fla. Bar No. 115784
Email: juan@peregonza.com
P. Brooks LaRou, Esq.
Fla. Bar No. 1039018
Email: brooks@peregonza.com
PEREGONZA THE ATTORNEYS, PLLC
5201 Blue Lagoon Drive
Suite 290
Miami, FL 33126
Tel. (786) 650-0202
Fax. (786) 650-0200

*Counsel for Plaintiff*


Miguel A. Morel, Esq.
Florida Bar No.: 89163
mamorel@littler.com
Sinead D. Motta, Esq.
Florida Bar No.: 115438
sdaly@littler.com
**LITTLER MENDELSON P.C.**
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Fax: (305) 675-8497

Attorney for Defendant


Method of Service: CM/ECF Notice.

24