UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20601-CIV-ALTONAGA/Damian

**MILAINE MARRERO**,

    Plaintiff,

v.

**AMAZON.COM SERVICES LLC**,

    Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Amazon.com Services LLC's Motion for Summary Judgment [ECF No. 18], filed on November 16, 2023. Plaintiff, Milaine Marrero filed a Response [ECF No. 24]; to which Defendant filed a Reply [ECF No. 29]. The Court has carefully considered the record, the parties' written submissions,[1] and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

This case arises from Defendant's alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, in its treatment of Plaintiff — its former fulfillment associate employee. (*See generally* Compl. [ECF No. 1]; *see also* SOF ¶ 7; Resp. SOF ¶ 7).

---

[1] The parties' factual submissions include Defendant's Concise Statement of Undisputed Material Facts in Support of Defendant's Motion for Final Summary Judgment ("SOF") [ECF No. 19]; Defendant's Notice of Filing Transcripts Referenced in Defendant's Concise Statement of Undisputed Material Facts ("Def.'s App.") [ECF No. 20]; Plaintiff's Response to Defendant's Statement of Facts and Incorporated Statement of Undisputed Facts ("Resp. SOF") [ECF No. 25]; Plaintiff's Appendix of Exhibits Referenced in Plaintiff's Statement of Material Facts ("Pl.'s App.") [ECF No. 26]; Defendant's Reply to Plaintiff's Response to Defendant's Concise Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Reply SOF") [ECF No. 30]; and supporting exhibits.

On April 12, 2021, Plaintiff visited Dr. Aldo Lujan Jr. for severe pain, swelling, and bleeding in her upper gums. (*See* Resp. SOF ¶ 100; Pl.'s App., Ex. 1, Lujan Dep. [ECF No. 26-1] 15:8–16).[2] Dr. Lujan diagnosed Plaintiff with a large periapical pathology, *i.e.*, an abscess, and gum infection, requiring extraction of five teeth. (*See* SOF ¶ 11; Resp. SOF ¶ 11; Lujan Dep. 18:17–23, 28:7–10). Plaintiff had radiographic bone loss and "needed to do something" about her condition, because she was very uncomfortable, in pain, and unable to eat. (SOF ¶ 12 (citation and quotation marks omitted); *see* Resp. SOF ¶ 12; *see also* Lujan Dep. 19:15–20:14).

On April 30, 2021, Plaintiff contacted Defendant's Disability and Leave Services department ("DLS") to request a leave of absence from May 16, 2021 through June 6, 2021[3] (*see* SOF ¶ 14; Resp. SOF ¶¶ 14, 109; Reply SOF ¶ 109); DLS found her eligible for FMLA leave from May 16, 2021 through June 5, 2021 (*see* SOF ¶ 15; Resp. SOF ¶ 15). Plaintiff underwent surgery to extract five teeth on May 14, 2021. (*See* SOF ¶ 19; Resp. SOF ¶ 19). On that same day, Dr. Lujan submitted a note to Defendant stating that Plaintiff needed to rest and could return to work in two weeks. (*See* SOF ¶ 20; Resp. SOF ¶ 20; Pl.'s App., Ex. 29, May 14, 2021 Note [ECF No. 26-29]). Thereafter, DLS approved Plaintiff for leave only through May 28, 2021 — pursuant to Dr. Lujan's May 14, 2021 Note — and advised that she was expected to return to work on May 29, 2021. (*See* SOF ¶¶ 20–22; Resp. SOF ¶¶ 20–22, 122; Reply SOF ¶ 122).

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

[3] The parties disagree on the expected end date of Plaintiff's leave of absence — Defendant says it was June 5, 2021. (*See* Reply SOF ¶ 109).

At Plaintiff's follow-up appointment on May 26, 2021, Dr. Lujan determined Plaintiff was still healing, had discomfort, and could not eat. (*See* Lujan Dep. 31:10-32:16). On May 28, 2021, Dr. Lujan submitted the following note to Defendant:

[Handwritten note dated 5-28-21 from Aldo Lujan, Jr., D.D.S., "Return to Work or School" form certifying that Milaine Manero has been under his care: "The patient had multiple extractions and sutures. Still has discomfort and swelling and is able to return to OFFICE. Remarks: Patient instructed to rest and return to the office in 3 weeks."]

(Pl.'s App., Ex. 40, May 28, 2021 Note [ECF No. 26-40]; SOF ¶ 29). The parties dispute the meaning of this Note. Defendant argues Dr. Lujan conveyed Plaintiff was ready to return to work as of the Note's date because he filled in the blank after "able to return to work on _____" with "office." (SOF ¶ 29 (quotation marks and citation omitted); *see* Reply SOF ¶ 128). Plaintiff insists

3

the Note was a request for extension of leave because the remarks section states Plaintiff was to rest for three additional weeks. (*See* Resp. SOF ¶ 128; *see also* Resp. 9).[4]

Plaintiff called DLS on two separate occasions to check the status of what she considered the request for extension of leave as communicated through the May 28, 2021 Note. (*See* Resp. SOF ¶¶ 129, 131; Reply SOF ¶¶ 129, 131; *see also* Pl.'s App., Exs. 42, 44, Employee Conversations [ECF No. 29-42, 29-44]). Per Dr. Lujan's instruction, Plaintiff continued to stay home and rest after May 28, 2021, despite not being approved for leave beyond that date. (*See* SOF ¶ 42; Resp. SOF ¶ 42).

Plaintiff's absence from work triggered Defendant's job abandonment process, which occurs "when an associate does not show up for work for three consecutive shifts without contacting" Defendant. (SOF ¶ 43 (citation omitted); *see* Resp. SOF ¶ 43 (disputing Defendant's characterization of the attendance policy)). Defendant sent Plaintiff emails advising her of the risk of job abandonment (*see* SOF ¶¶ 44–45, 47–49), but Plaintiff did not communicate with Defendant beyond the May 28, 2021 Note and her telephone calls with DLS checking on the status of her leave request (*see* Resp. SOF ¶¶ 44–45, 47–49, 128–29, 131; Reply SOF ¶¶ 128–29, 131).

On June 6, 2021, DLS case assistant Vershanda Williams was assigned Plaintiff's case. (*See* Resp. SOF ¶ 133; Reply SOF ¶ 133). Williams determined that Plaintiff was released to return to work as of May 28, 2021 and had "active punches" in the system — meaning Plaintiff was in active status in the system. (Resp. SOF ¶ 134; *see* SOF ¶¶ 35, 39; Resp. SOF ¶¶ 35, 39, 134; Reply SOF ¶ 134; *see also* Pl.'s App., Ex. 4, Final Hr'g Tr. [ECF No. 26-4] 202:16–204:2).

---

[4] The parties also dispute the severity of Plaintiff's limitations. For example, according to Defendant, Plaintiff resumed work as a Lyft driver on May 20, 2021 (*see* SOF ¶ 30), but Plaintiff states she attempted to work and "was in too much pain and was unable to do so" (Resp. SOF ¶ 30 (indicating Plaintiff worked at Lyft for four hours on May 20, 2021, and ten minutes on May 21, 2021, and did not work at Lyft again until June 24, 2021)).

Human Resources coordinator, Kiara Schulz, took over the case on June 10, 2021; she was responsible for reviewing cases to make sure the associate was not requesting an extension, and she confirmed Williams's findings. (*See* SOF ¶¶ 52–55; Resp. SOF ¶¶ 52–55 (disputing the coordinator's job duties but not her findings); *see also* Schulz Dep. 36:9–13). Defendant terminated Plaintiff on June 10, 2021. (*See* SOF ¶ 58; Resp. SOF ¶ 58).

On August 10, 2021, Plaintiff filed a charge of discrimination against Defendant with the Florida Commission on Human Relations ("FCHR") and United States Equal Opportunity Commission ("EEOC"). (*See* SOF ¶ 66; Resp. SOF ¶ 66). On January 24, 2022, the FCHR issued its decision stating there was no reasonable cause to believe any unlawful employment practice occurred. (*See* SOF ¶ 69; Resp. SOF ¶ 69). The parties participated in an administrative hearing before an Administrative Law Judge ("ALJ"), who issued an order with the same finding. (*See* SOF ¶ 77; Resp. SOF ¶ 77). The FCHR later adopted the ALJ's order, as did the EEOC. (*See* SOF ¶ 80; Resp. SOF ¶ 80).

Plaintiff filed this lawsuit on February 14, 2023, alleging claims of FMLA interference (Count I), FMLA retaliation (Count II), failure to accommodate under the ADA (Count III), disability discrimination under the ADA (Count IV), and ADA retaliation (Count V). (*See generally* Compl.). Defendant raised several defenses, including that Plaintiff's claims are collaterally estopped as a result of the state agency proceedings. (*See* Answer and Statement of Affirmative Defenses [ECF No. 6] 11; Mot. 8–9). Defendant moves for summary judgment on its estoppel defense and on all claims. (*See generally* Mot.).

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a).

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *See id.* 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the moving party bears the burden of proof on the relevant issue at trial, it can meet its summary judgment burden only "by presenting *affirmative* evidence showing the absence of a genuine issue of material fact — that is, facts that would entitle it to a directed verdict if not controverted at trial." *Emery v. Talladega Coll.*, 169 F. Supp. 3d 1271, 1280–81 (N.D. Ala. 2016) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). With that showing made, the moving party "is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick*, 2 F.3d at 1115 (alterations adopted; quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof

must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (alteration added; quotation marks omitted; quoting Fed. R. Civ. P. 56(c)(1)).

### III. DISCUSSION

Defendant first seeks summary judgment on its collateral estoppel affirmative defense, arguing Plaintiff's ADA claims are collaterally estopped as a result of the determinations made by the ALJ (*see* Mot. 9–10); Defendant also argues it is entitled summary judgment on all of Plaintiff's claims (*see generally* Mot.). The Court first addresses Defendant's collateral estoppel arguments before turning to the merits of each of Plaintiff's five claims.

**A. Collateral Estoppel**

Defendant insists Plaintiff is collaterally estopped from raising her ADA claims because the factual issues underlying the claims were fully litigated before the FCHR. (*See* Mot. 8–9). According to Plaintiff, collateral estoppel does not apply to unreviewed state administrative proceedings on ADA claims. (*See* Resp. 3–4). Because collateral estoppel is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1); *Richards v. Sen*, 825 F. Supp. 2d 1259, 1262 (S.D. Fla. 2010), Defendant has the burden of proof, *see In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("[I]t is well established that the party asserting an affirmative defense usually has the burden of proving it." (alteration adopted; other alteration added; quotation marks and citation omitted)).

The collateral estoppel doctrine precludes "relitigation of particular issues which were actually litigated and decided in a prior suit." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990) (citations and footnote call number omitted). The doctrine extends to decisions made by state agencies acting in a judicial capacity. *See Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003).

In *University of Tennessee v. Elliott*, the Supreme Court identified an exception to this rule — unreviewed state agency findings are not entitled to preclusive effect in Title VII actions in federal court. *See* 478 U.S. 788, 795–96 (1986) (relying in large part on 42 U.S.C. section 2000e-5(b)'s requirement that the EEOC give state decisions "substantial weight" — not preclusive effect — in Title VII actions). The Supreme Court has not yet dealt with the preclusive effect of collateral estoppel in ADA cases but has extended the *Elliott* exception to Age Discrimination in Employment Act cases. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110–11 (1991). Several circuits have extended the *Elliott* exception to ADA claims, *see Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 n.5 (1st Cir. 1998); *Medeiros v. City of San Jose*, No. 98-cv-16530, 1999 WL 613405, at *1 (9th Cir. Aug. 12, 1999) ("Unreviewed state agency findings are not afforded preclusive effect in ADA actions." (citations omitted)); *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 827–28 (6th Cir. 2013) ("[C]ommon law collateral estoppel principles do not apply to claims brought under the ADA[.]" (alterations added)); but the Eleventh Circuit has not yet opined on the issue.

The Court agrees with Plaintiff — the ALJ's determination is not entitled preclusive effect because it was not reviewed by a state court.[5] "[T]he weight of authority" holds that "unreviewed state administrative decisions cannot have preclusive effect on ADA claims."[6] *Howard v. Steris*

---

[5] There is no dispute that the ALJ's determination was not reviewed by a state court. (*See* Resp. 4 (quoting *McInnes v. California*, 943 F.2d 1088, 1093–94 (9th Cir. 1991); other citations omitted); Reply 4). Further, Defendant's contention that Plaintiff's ADA claims are barred because she failed to "ask a Florida appellate court to review the ALJ findings" is incorrect. (Reply 4). The ADA does not require a plaintiff to exhaust her claims fully through state appellate processes before filing a claim in federal court — the only requirement is that the plaintiff file a charge with the EEOC. *See Snoddy v. Prince George's Cnty. Gov't*, No. 21-2528-Civ, 2023 WL 5509323, at *4 (D. Md. Aug. 24, 2023) (citing 42 U.S.C. § 2000e-5(e)(1)). Plaintiff did so. (*See* SOF ¶ 66; Resp. SOF ¶ 66).

[6] Defendant's examples of cases applying collateral estoppel to agency decisions of Title VII claims are irrelevant as they all involve decisions reviewed by state courts. (*See* Reply 3 (citing *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1372 (S.D. Fla. 2010); *Cataldo v. St. James Episcopal Sch.*, 213 F. App'x

*Corp.*, 886 F. Supp. 2d 1279, 1290 (M.D. Ala. 2012) (alteration added); *see also Gatewood v. Unlimited Path, Inc.*, No. 18-cv-66, 2019 WL 920912, at *2 (N.D. Fla. Jan. 17, 2019), *report and recommendation adopted*, 2019 WL 919597 (N.D. Fla. Feb. 25, 2019). "The analysis is straightforward because the ADA explicitly incorporates all of the enforcement powers, remedies, and procedures of Title VII[,]" including those *Elliott* relied on. *Smith*, 708 F.3d at 828 (alteration added; citing 42 U.S.C. § 12117). The Court thus denies summary judgment on Defendant's affirmative defense of collateral estoppel.

### B. FMLA Interference

Plaintiff's first claim is that Defendant violated her FMLA rights (Count I). (*See* Compl. ¶¶ 31–44). Under the FMLA, employees are entitled to to "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions" of her job position. 29 U.S.C. § 2612(a)(1)(D) (alterations added). To prove FMLA interference, an employee must show that her employer "denied or otherwise interfered with" her substantive rights under the act. *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citation omitted). Defendant insists Plaintiff does not provide sufficient evidence to establish an FMLA interference claim because she (1) did not have a serious health condition and (2) cannot show Defendant denied her any benefit she was entitled to under the FMLA. (*See* Mot. 14).

***Serious Health Condition***. The FMLA defines serious health condition as "an illness, injury, impairment, or physical or mental condition" involving "(A) inpatient care . . . ; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11) (alteration added).

---

966, 967 (11th Cir. 2007); *Makere v. Allstate Ins. Co.*, No. 20-cv-905, 2023 WL 4107107, at *1 (M.D. Fla. June 21, 2023))).

Defendant insists Plaintiff's condition cannot be a serious health condition because according to the FMLA regulations, "periodontal disease ordinarily do[es] not meet the definition of a serious health condition[.]" (Mot. 14–15 (alterations added; emphasis omitted; citing 29 C.F.R. § 825.113(d))). Defendant states Plaintiff's condition was not serious, because the expected recovery time was only three to four weeks. (*See id.* 15). Further, Dr. Lujan testified Plaintiff required no further treatment;[7] and Plaintiff resumed working for Lyft shortly after her surgery — a "fact" Plaintiff disputes. (*See id.*; Resp. SOF ¶ 30 (indicating Plaintiff worked at Lyft for four hours on May 20, 2021, and ten minutes on May 21, 2021, and did not work at Lyft again until June 24, 2021)).

Plaintiff insists she meets her evidentiary burden for establishing a serious health condition. According to Plaintiff, she received continuing treatment for her periodontal disease from April 12, 2021 until June 9, 2021; and although her condition may not be permanent, it could create a life-threatening condition if left untreated. (*See* Resp. 15–16). The Court agrees with Plaintiff.

Under the FMLA, a condition may qualify as a serious health condition involving continuing treatment if it involves a "period of incapacity of more than three consecutive, full calendar days" and at least two or more subsequent treatments within 30 days of the initial incapacity. 29 C.F.R. § 825.115(a)(1) (alterations added). Plaintiff provides evidence she was incapacitated for two weeks following her surgery on May 14, 2021 (*see* Resp. 16 (citing Resp. SOF ¶ 118; other citation omitted); *see also* May 14, 2021 note (instructing Plaintiff to rest for two weeks)), and that she visited Dr. Lujan twice after becoming incapacitated (*see* Resp. SOF ¶¶ 117, 128).

---

[7] Defendant omits any citation to the record for this assertion. (*See* Mot. 15).

10

Admittedly, "periodontal disease" or "routine dental . . . problems" "[o]rdinarily" do not qualify absent "complications[.]" 29 C.F.R. § 825.113(d) (alterations added). Yet, Plaintiff provides evidence of complications, including radiographic bone loss and a large periapical pathology abscess in at least two of her teeth, leading to extraction of her upper maxillary teeth. (*See* Resp. SOF ¶ 104; Lujan Dep. 18:19–19:19).[8] Further, courts have considered periodontal disease a "serious medical condition" in other contexts. *Rucano v. Koenigsmann*, 12-cv-00035, 2014 WL 1292281, at *9–10 (N.D.N.Y. Mar. 31, 2014) (accepting periodontal disease as a "serious medical condition" in the context of a prisoner case arising under 42 U.S.C. section 1983 (citations omitted)); *see Board v. Farnham*, 394 F.3d 469, 483 n.7 (7th Cir. 2005) (same).

Nonetheless, Defendant attempts to analogize Plaintiff's condition to the employee's in *Flanagan v. Keller Products Inc.* (*see* Mot. 15 (citing No. 00-542-Civ, 2002 WL 313138, *6–8 (D.N.H. Feb. 25, 2002))), which is inapt. The employee there sought to prove her dental condition was a serious health condition because it was a "chronic" illness, *Flanagan*, 2002 WL 313138, at *6 (quotation marks omitted), which involves a different subsection of the applicable regulation. *Compare* 29 C.F.R. § 825.115(c) *with id.* § 825.115(a). Unlike here, the employee in *Flanagan* lacked evidence that she was incapacitated for more than three consecutive calendar days, so she could not proceed under section 825.115(a). *See Flanagan*, 2022 WL 313138, at *6.

In short, while dental disease sometimes may not rise to the severity required for FMLA protection, that does not imply dental disease can never create eligibility under the FMLA. Plaintiff presents evidence she was incapacitated for at least the minimum duration required by the

---

[8] Dr. Lujan testified that Plaintiff's condition could become life-threatening if left untreated. (*See* Resp. SOF ¶ 105; Lujan Dep. 19:20–23). Whether this testimony is admissible at trial is the subject of one of Defendant's Motions *in Limine* [ECF No. 33], but Defendant has not objected to the admissibility of the evidence in its summary judgment briefing (*see generally* Mot.; Reply; Reply SOF).

statute and that her condition was "serious." As such, she creates a triable issue of fact on this issue.

***Denial of Benefits***. Defendant next argues Plaintiff did not request leave, certified by her dentist, after May 28, 2021, meaning there was no benefit for Defendant to deny. (*See* Mot. 15–16). According to Plaintiff, she originally requested extended FMLA leave by submitting the May 28, 2021 note and followed up in her June 1 and 2, 2021 telephone conversations with Defendant's DLS agents. (*See* Resp. SOF ¶¶ 128–129, 131). The parties present two conflicting inferences from the Note and telephone calls (*see generally* Mot.; Resp.) — demonstrating a genuine dispute of material fact.

Accordingly, summary judgment on Count I is denied.

## C. Failure to Accommodate and Disability Discrimination Under the ADA

Before turning to the parties' arguments on the ADA claims, the Court first notes that Plaintiff's claims of failure to accommodate (Count III) and disability discrimination (Count IV) under the ADA (*see* Compl. ¶¶ 57–70) are essentially the same. The Court explains.

To prevail on an ADA failure to accommodate claim, a plaintiff must demonstrate (1) she was a qualified individual with a disability; (2) she made a request for reasonable accommodation; and (3) her employer failed to provide the reasonable accommodation. *See D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020) (citation omitted) (applying the ADA framework to a Florida Civil Rights Act claim). Similarly, to prevail on a disability discrimination claim, a plaintiff must prove she "(1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019) (citation omitted).

These claims are closely related, because in an ADA case, an employee can prove discrimination by "an employer's failure to reasonably accommodate an 'otherwise qualified' disabled employee[,]" unless the employer can show "undue hardship." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1249 (11th Cir. 2007) (alteration added; quotation marks omitted); *see also Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017) (citation omitted) (same); 42 U.S.C. § 12112(b)(5)(A) (same). Given the significant overlap between failure to accommodate and disability discrimination claims, the Court considers Counts III and IV together.

Defendant argues summary judgment is warranted on both claims because Plaintiff cannot show she is disabled or a qualified individual, or that Defendant failed to grant her an accommodation. (*See* Mot. 9–13). Plaintiff maintains she presents sufficient evidence to establish a genuine issue of fact as to whether she was disabled, qualified, and given an accommodation. (*See* Resp. 5–13). The Court considers the parties' competing positions.

***Disability***. To qualify as disabled under the ADA, a plaintiff must (1) have a physical or mental impairment that substantially limits one or more major life activities (including but not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working); (2) have a record of such impairment; or (3) be regarded as having such impairment. *See* 42 U.S.C. §§ 12102(1), (2)(a).

Defendant asserts the "evidence does not show" Plaintiff's gum infection "substantially limited any major life activities[,]" and Plaintiff thus cannot show she is disabled under the ADA. (Mot. 10 (alteration added)). According to Defendant, Plaintiff only had "garden-variety restrictions" after her surgery; and Plaintiff resumed working as a driver for Lyft only one week

13

after her surgery. (*Id.* 11 (citing SOF ¶ 30)). Additionally, Defendant construes Dr. Lujan's May 28, 2021 Note as indicating Plaintiff could return to work. (*See id.*; SOF ¶ 29).

Plaintiff maintains that she experienced severe pain and was (and still is) substantially limited in her ability to eat, communicate with others, and work. (*See* Resp. 7–8; *see also* Lujan Dep. 38:13–14, 51:6–13, 75:25–76:20; Pl.'s App., Ex. 6, Marrero Dep. [ECF No. 26-6] 165:16–20, 169:5–7; 188:21–24). Plaintiff also disputes whether she returned to work for Lyft after her surgery — she says she tried to but "was in too much pain and was unable to do so." (Resp. SOF ¶ 30). Further, Plaintiff contests Defendant's interpretation of the May 28, 2021 Note, claiming it instructs Plaintiff to wait three weeks before returning to work. (*See id.* ¶ 29).

These competing interpretations of the evidence demonstrate the existence of a genuine dispute of material fact as to the seriousness of Plaintiff's injuries and how much they affected her life. Plaintiff has presented evidence that she was substantially limited in her ability to work and perform certain tasks (*see* Resp. 7–8; Resp. SOF ¶ 118; Lujan Dep. 38:13–14, 51:6–13, 75:25–76:20; Marrero Dep. 165:16–20, 169:21–170:2), and also has a medical record of such impairment (*see* May 28, 2021 Note). While the parties present conflicting inferences to be drawn from this evidence, as Defendant surely knows, the Court must draw all reasonable inferences in *Plaintiff's* favor, not Defendant's. *See Chapman*, 229 F.3d at 1023; *see also Whelan v. Royal Caribbean Cruises Ltd.*, No. 12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) ("Summary judgment may be inappropriate even where the parties agree on the basic facts[] but disagree about the inferences that should be drawn from these facts." (alteration added; citation omitted)).

***Qualified Individual***. To be a qualified individual under the ADA, a plaintiff must be able to perform the essential functions of employment, with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8). A plaintiff bears both the burden of identifying an accommodation that

14

would allow her to perform the essential functions of her job and of persuading such accommodation is reasonable. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (citation omitted).

Plaintiff states she would have been able to perform her job if given the leave necessary to complete her treatment. (*See* Resp. 8–9). According to Plaintiff, she requested an extension of her leave by submitting the May 28, 2021 Note and followed up in telephone calls with Defendant's DLS agents. (*See* Resp. SOF ¶¶ 128–129, 131).

Defendant argues Plaintiff never requested extended leave. According to Defendant, even if the May 28, 2021 Note were a request for extended leave, it would be a request for "open-ended, indefinite leave[,]" which is "unreasonable as a matter of law[.]" (Mot. 12 (alterations added)). Notably, Defendant does not dispute that Plaintiff spoke on the telephone with Defendant's DLS agents about her leave request. (*See* Reply SOF ¶¶ 129, 131).

Certainly, an indefinite leave of absence would not be a reasonable accommodation. *See Wood v. Green*, 323 F.3d 1309, 1312–14 (11th Cir. 2003). But in general, "leaves of absence can be reasonable accommodations under the ADA." *Hargrove v. Ladson*, No. 23-020-Civ, 2023 WL 2254691, at *2 (S.D. Ga. Jan. 26, 2023) (citation omitted), *report and recommendation adopted*, 2023 WL 2245109 (S.D. Ga. Feb. 27, 2023); *see also Richio v. Miami-Dade Cnty.*, 163 F. Supp. 2d 1352, 1365 (S.D. Fla. 2001) ("Under the ADA, the term 'reasonable accommodation' may include . . . an extended leave of absence" (alteration added; citing *Stewart*, 117 F.3d at 1285; other citations and footnote call number omitted)).

Essentially, the parties dispute whether Plaintiff sought leave by submitting the May 28, 2021 Note, and if so, whether she sought only three weeks or an indefinite leave of absence. (*See* Mot. 11–12; Resp. 8–9). These are factual questions for the jury to decide. And whether three

weeks of leave is reasonable is also a question for the factfinder. *See Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1306 (S.D. Fla. 2013) ("Generally, whether a proposed modification is 'reasonable' presents a question of fact." (citations omitted)); *Sawinski v. Bill Currie Ford, Inc.*, 881 F. Supp. 1571, 1574–75 (M.D. Fla. 1995) (citation omitted).

*Causation*.  Finally, Defendant argues Plaintiff fails to establish any discrimination caused by her disability. (*See* Mot. 12).  According to Defendant, Plaintiff's employment was terminated because she failed to return to work, not because of disability-based animus. (*See id.*).  As explained, "an employer's failure to reasonably accommodate an 'otherwise qualified' disabled employee" constitutes unlawful discrimination unless the employer can show "undue hardship." *Holly*, 492 F.3d at 1249 (quotation marks omitted); *see also* 42 U.S.C. § 12112(b)(5)(A).  The Court has already concluded there is a material dispute of fact as to whether (1) Plaintiff requested an accommodation and (2) whether such requested accommodation was reasonable.  Since Defendant does not argue it would experience undue hardship (*see generally* Mot.), its causation argument is unavailing, *see Holly*, 492 F.3d at 1249.

Having rejected each of Defendant's arguments regarding Counts III and IV, summary judgment is denied as to these claims.

**D.  Retaliation**

Last, Defendant seeks summary judgment on Plaintiff's FMLA and ADA retaliation claims (Counts II and V, respectively) because: (1) Plaintiff did not engage in any statutorily protected activity; and (2) Plaintiff's termination was a result of her job abandonment, not retaliatory animus. (*See* Mot. 13–14, 16–18).  According to Plaintiff, Defendant ignored her request for extension of

FMLA leave and then terminated her; Plaintiff argues this is sufficient evidence to survive summary judgment. (*See* Resp. 20–22).[9]

Defendant further contends Plaintiff is required to — and fails to — satisfy the *McDonnell Douglas* burden-shifting framework to survive summary judgment on her FMLA retaliation claim. (*See* Mot. 16 (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); other citations omitted)). Under the framework, an employee must establish a *prima facie* case for retaliation by demonstrating (1) she "engaged in statutorily protected activity;" (2) "suffered an adverse employment action;" and (3) "the decision was causally related to the protected activity." *Strickland*, 239 F.3d at 1207 (citation omitted). Once an employee establishes the *prima facie* case, the burden shifts to the employer to put forth evidence of a legitimate non-discriminatory reason for the adverse employment action. *See Fonte v. Lee Mem'l Health Sys.*, No. 20-13240, 2021 WL 5368096, at *4 (11th Cir. Nov. 18, 2021). If the employer does so, the burden shifts back to the employee to provide sufficient evidence the proffered reason was pretextual. *See id.*

Plaintiff attempts to sidestep the *McDonnell Douglas* standard — entirely declining to make a case under it — and instead requests the Court consider her case under a "mixed-motive" framework. (Resp. 19–20 (citations and footnote call number omitted)). Under the mixed-motive theory, an employee can prevail by showing protected activity was a motivating factor for an adverse employment action, even if other factors also motivated the action. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1237–39 (11th Cir. 2016) (citations omitted). This contrasts with

---

[9] Plaintiff only responds regarding her FMLA retaliation claim. (*See generally* Resp.; *see also id.* 22 (only addressing ADA discrimination, ADA failure to accommodate, FMLA interference, and FMLA retaliation)). "Where . . . [a] non-movant fails to address a particular claim asserted in the summary judgment motion[] but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional, and therefore consider the claim abandoned." *Reid v. Hasty*, No. 07-cv-2475, 2009 WL 10711917, at *9 n.12 (N.D. Ga. Nov. 5, 2009) (alterations added). Summary judgment is thus granted on Count V.

*McDonnell Douglas*, which requires an employee to demonstrate the employer's proffered reason is false to prove pretext. *See id.* at 1237–38 (citations omitted); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (stating that to prove pretext, a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason" (emphases in original)).

The Court agrees with Defendant that *McDonnell Douglas* applies, and the mixed-motive theory does not. To start, the Eleventh Circuit frequently applies *McDonnell Douglas* to FMLA retaliation claims. *See, e.g.*, *Fonte*, 2021 WL 5368096, at *4; *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1268 (11th Cir. 2008). Plaintiff's argument that a mixed-motive framework should apply relies on a Title VII *discrimination* case (*see* Resp. 20 (citing *Quigg*, 814 F.3d at 1236; other citation omitted)), but "it is well-established that the mixed-motive framework does not apply to Title VII *retaliation* claims[,]" *Yelling v. St. Vincent's Health Sys.*, 82 F. 4th 1329, 1338 (11th Cir. 2023) (alteration and emphasis added; citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); footnote call number omitted). It is thus unlikely the Eleventh Circuit would extend the mixed-motive framework to FMLA retaliation claims; indeed, the Eleventh Circuit has declined to do so. *See Fonte*, 2021 WL 5368096, at *4. District courts have followed suit. *See, e.g.*, *Pennell v. Judd*, No. 19-cv-2433, 2022 WL 3345630, at *20 n.20 (M.D. Fla. Aug. 12, 2022). Given the Eleventh Circuit's refusal to apply a mixed-motive standard to Title VII and FMLA retaliation claims, the Court considers Plaintiff's claim under *McDonnell Douglas*.

Under *McDonnell Douglas*, Plaintiff must first demonstrate a *prima facie* case of retaliation. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Plaintiff clearly does — (1) her request for an extension of leave is statutorily protected action, (2) her termination was an adverse employment action, and (3) the close temporal proximity of the two shows a causal link. *See Salem v. City of Port St. Lucie*, 788 F. App'x 692, 696 (11th Cir. 2019) ("Close temporal proximity

between an employee's protected conduct and the adverse action is generally sufficient to create a genuine issue" as to causation in a *prima facie* case. (citation omitted)).

Next, Defendant must present evidence of a legitimate non-discriminatory reason, and it does — "Plaintiff was terminated due to job abandonment consistent with [Defendant]'s policies." (Mot. 17 (alteration added); *see also* SOF ¶¶ 42–58).

Finally, to satisfy the third and last prong of *McDonnell Douglas*, Plaintiff must show the reason was a "pretext to mask retaliation." *Mastaw v. W. Fla. Med. Ctr. Clinic, PA*, No. 95-9135-Civ, 2023 WL 5426757, at *3 (11th Cir. Aug. 23, 2023) (citation omitted). As discussed, to sufficiently show Defendant's reason is pretextual, Plaintiff must demonstrate it is false and the true reason is discrimination. *See Quigg*, 814 F.3d at 1237–38 (citations omitted).

Problematically for Plaintiff, her reliance on a mixed-motive theory forecloses her success under *McDonnell Douglas*. In support of her mixed-motive theory, Plaintiff states that Defendant had "legitimate and non-legitimate reasons" for her termination. (Resp. 20). While some courts allow plaintiffs to argue under both frameworks in the alternative, *see Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008), Plaintiff makes no effort to show Defendant's "legitimate reasons" are false (Resp. 20; *see generally id.*) and instead admits they are true.[10] In short, Plaintiff's mixed-motive theory is "fatally inconsistent" with *McDonnell Douglas*. *Quigg*, 814 F.3d at 1237 (citation omitted). Since Plaintiff does not and cannot show Defendant's proffered

---

[10] The closest Plaintiff comes to refuting the legitimacy of Defendant's proffered reason is arguing Vershanda Williams, a DLS agent, falsely stated she had "active punches" on her file (Resp. 22), but Plaintiff neither explains what that means nor connects it to any wrongdoing by Defendant (*see generally id.*). Upon a closer look at the record, having "active punches" only means an employee is "active" and "able to punch in and out," not that she already returned to work. (Final Hr'g Tr. 202:16–24, 203:20–204:2). This is consistent with Defendant's argument and not refuted by the record. (*See generally* Mot.; Resp.).

reason was pretextual, her FMLA retaliation claim fails.[11]  Summary judgment is therefore granted as to Count II.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Amazon.com Services LLC's Motion for Summary Judgment **[ECF No. 18]** is **GRANTED** as to Counts II and V and **DENIED** as to Counts I, III, and IV.

**DONE AND ORDERED** in Miami, Florida, this 19th day of January, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[11] While there is some evidence in the record that could conceivably show Defendant's proffered reason for termination was unworthy of belief, Plaintiff does not make this argument, and the Court will not make it for her.  *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." (citation omitted)).